## *In re* JOHN POWELL.

No. A-1533.  Opinion Filed January 11, 1912.

(120 Pac. 1022.)

1.   **STATUTES—Sufficiency of Title.** (a) It is not necessary for the title to an act of the Legislature to embrace an abstract of its contents. It is sufficient, if the title contains a reasonable intimation of the matters under legislative consideration, to state the subject of the bill in general terms, and with fewest words, in accordance with the general custom, to which the framers of the Constitution intended the Legislature to conform.

(b) When there are numerous provisions having one general object, the title is sufficient if it fairly indicates the general purpose of the act. The details providing for the accomplishment of such purpose are to be regarded as necessary incidents.

(c) All the provisions of this act are for one object only—the care of delinquent and dependent children, as expressed in the title.

2.   **INFANTS—Capacity to Commit Crime—Juvenile Courts.** (a) Under the provisions of this act, a child under sixteen years of age cannot be guilty of the commission of a crime, except in cases wherein it is shown that such child knew the wrongfulness of his acts at the time they were committed.

(b)   The acts or omissions of a child, which in an adult would be a crime, under this law, constitute juvenile delinquency only, except in cases wherein the juvenile court finds that the child, at the time the acts complained of were committed, knew the wrongfulness thereof, and holds such child for trial before a court of competent jurisdiction.

(c)   This law contemplates an investigation by the juvenile court of the complaints against a child with the view of determining whether or not the child committed such acts, and, if so, whether or not he knew the wrongfulness thereof in a criminal sense.   And if, upon such investigation, the juvenile court finds affirmatively, it is then within its discretion to hold such child, to be proceeded with in the manner provided by law in the court having competent jurisdiction of the offense, certifying to such court both his finding as to probable cause, and that the child knew the wrongfulness of the acts complained of.

(d)   The finding of the juvenile court that the child knew the wrongfulness of his acts, and was capable of committing the offense, and did commit it, does not relieve the state of the burden of proving upon the trial that the child knew the wrongfulness thereof, as provided in subdivision 2, section 2034, Snyder's Stat.   The only effect the act in question has on said subdivision is to change the word "fourteen" to "sixteen," subsequent to the action of the juvenile court.

3.   **INFANTS — Statutes — Juvenile Court.**   The object of this statute is not punishment, but reform and moral training.   It creates a new offense, but creates no new court, and takes away no jurisdiction heretofore conferred upon any of the courts to try offenses against the penal laws of the state.   It simply places additional duties on the county courts, and provides a different method of bringing children before the courts to be dealt with.

4.   **SAME—Punishments.**   It is no light matter to compel a boy or girl to spend his or her childhood days in restraint, and there should be clear proof of the necessity of such a course before a child is committed under the provisions of this act.   The law contemplates a system of probation wherein the state places itself in loco parenti.   The treatment of a child contemplated by this law is, as near as may be, that which should be given by his parents.   This act should be liberally construed in favor of the welfare of the child, and only for grave offenses, such as affect the general welfare of the public, should a child be proceeded against in accordance with the laws that may be in force governing the commission of crime.   The rights of the child whose welfare is at stake, as well as the rights of his parents, must be duly regarded and protected by the court.

5.   **SAME—Protection.**   (a)   The law under consideration rests on the fundamental doctrine that a child, the moment he is born, owes allegiance to the government of the country of his birth, and is entitled to the protection of that government for his person as well as his property.

(b)   The Legislature not only has the power to enact such

provisions, but it is the duty of the state in its character as parens patriae to do so.

6.  **SAME—Power of Commissioner of Charities and Corrections.** The Act of the Legislature approved February 24, 1911, not only authorizes the Commissioner of Charities and Corrections to institute proceedings in this character of cases, but imposes that duty.

7.  **INFANTS—Juvenile Courts—Jurisdiction.** Under the provisions of this act, the juvenile courts are the only courts having· jurisdiction to commit children to the Training School for Boys, and are the only courts having jurisdiction to hear and determine complaints against children under sixteen years of age for the infraction of any penal statute whatever, until after such juvenile court shall have held the child to be tried in the manner hereinbefore set out. This act repeals sections 8539 and 8543 of Snyder's Statutes, and provides complete proceedings for the disposition of cases arising thereunder.

(Syllabus by the Court.)

Application for writ of *habeas corpus*. Writ issued, and prisoner discharged.

*Dr. J. H. Stolper,* for petitioner.

*Robert Wimbish,* Co. Atty., for respondent.

ARMSTRONG, J. This is an application for a writ of *habeas corpus* brought by Miss Kate Barnard, State Commissioner of Charities and Corrections, on behalf of John Powell, a boy fourteen years of age, seeking his discharge from a judgment of conviction rendered by the district court of Pontotoc county, imposing a sentence. of .two years in the State Training School at Pauls Valley.

Petitioner was arrested on the 8th day of September, 1911, upon a warrant issued by H. J. Brown, justice of the peace in said county, charging him with the crime of burglary. An examining trial was had before the said justice, and petitioner held to await the action of the district court. On September 16th, the county attorney of Pontotoc county filed an information against petitioner, and on the 4th day of December thereafter a plea of guilty was entered, and the aforesaid judgment and sentence rendered by the court.

The petition is based upon the provisions of the act of the Legislature, approved March 24, 1909 (Laws 1909, c. 14, art. 8),

commonly known as the "Juvenile Court Law." The title to the act is as follows: "An act to Define Dependent, Neglected and Delinquent Children, and to Regulate the Treatment, Control, and Custody thereof by County Courts."

The obection was raised and argued that the Commissioner of Charities and Corrections of the state of Oklahoma has not the authority to bring a suit of this nature. We are of the opinion that this objection is not well taken, for the reason that the right of the Commissioner of Charities and Corrections to institute proceedings of this character is conferred, and the duty to do so. imposed by the act of February 24, 1911. See Sess. Laws 1911, p. 46.

It is contended on the part of the state that the law is invalid because of defect in title, that it creates a juvenile court and a probation officer which are not mentioned in the title, and because it embraces more than one subject.

Section 57, article 5, of the Constitution provides:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title."

In order that a complete understanding may be had of the various questions considered in this opinion, we quote the statute involved in full, which is all the law on this subject enacted up to this time by the Legislature of Oklahoma:

"Section 1. This act shall apply to any child under the age of sixteen years not now or hereafter an inmate of a state institution incorporated under the laws of this state. For the purpose of this act the words 'dependent child' and 'neglected child' shall mean any child under the age of sixteen years who for any reason is destitute, homeless or abandoned; or dependent upon the public for support; or has not the proper parental care or guardianship; or who habitually begs or receives alms; or who is found living in any house of illfame, or within a vicious or disreputable place; or whose home, by reason of neglect, cruelty or depravity on the part of its parents, guardians or any other person in whose care it may be, is an unfit place for such a child; and any child under the age of eight years who is found begging, singing, or playing any musical instrument upon the street, or giv-

ing any public entertainment, or who accompanies or is used in
·aid of any person so doing.

"The words 'delinquent child' shall include any child under
the age of sixteen years who violates any law of the United
States, or of this state, or any city or village ordinance; or who
is incorrigible, either at home or in school, or who knowingly
associates with thieves, vicious or immoral persons, or who, with-
out just cause and without the consent of its parents or custodian,
absents itself from home or its place of abode, or who is growing
up in idleness or crime; or who knowingly frequents a house of
illrepute; or who knowingly frequents any policy shop, or place
where any gaming device is operated; or who patronizes or visits
any public pool rooms or bucket shop; or who wanders about the
street in the night time without being on any lawful business or
occupation, or who habitually wanders about any railroad yards
or tracks, or who habitually uses vile, obscene, vulgar, profane
or indecent language; or who is guilty of immoral conduct in
any public place or about any schoolhouse; or who is addicted
to the use of intoxicating liquor or any injurious drugs, or who
is the user of cigarettes.

"Any child committing any of the acts herein mentioned
shall be deemed a delinquent child and shall be proceeded against
as such in the manner herein provided.  A disposition of any
child under this act or any evidence given in such cause, shall not
in any civil, criminal or other cause or proceedings whatever in
any court be lawful or proper evidence against such child for
any purpose whatever, except in subsequent cases against the
same child under this act.  The word 'child' or 'children' may
be held to mean one or more children, and the word 'parent' or
'parents' may be held to mean one or both parents, when con-
sistent with the intent of this act.  The word 'association' shall
include any corporation which includes in its purposes the care or
disposition coming within the meaning of this act.

"Sec. 2.  The county courts of the several counties in this
state shall have jurisdiction in all cases coming within the terms
and provisions of this act.  In trials, under this act, the child in-
formed against, or any person interested in such child, shall have
the right to demand a trial by jury, which shall be granted as
in other cases unless waived, or the judge of his own motion
may call a jury to try any such case.  In all counties a special
record book or books shall be kept by the court for all cases com-
ing within the provisions of this act, to be known as the 'Juvenile
Record,' and the docket or calendar of the court upon which shall

appear the case or cases under the provisions of this act, shall be known as the 'Juvenile Docket,' and, for convenience, the court in the trial and disposition of such cases, shall be called the 'Juvenile Court.' Between the first and thirtieth days of October of each year, the clerk or judge who acts as such clerk of the county courts shall submit to the Commissioner of Charities and Corrections a report in writing, upon blanks to be furnished by said Commissioner, showing the number and disposition of delinquent children brought before such court, together with such other useful information regarding such cases and the parentage of such children as may reasonably be obtained at the trials thereof, provided that the name or identity of any such child or parents shall not be disclosed in such report.

"Sec. 3.  Any reputable person being a resident of the county, having knowledge of a child in his county who appears to be either neglected, dependent or delinquent, may file with the clerk of court having jurisdiction in the matter, a petition in writing, setting forth facts verified by affidavits.  The petition shall set forth the name and residence of the legal guardian, if known, or if not known, then the name and residence of near relative, if there be one and his residence known.  It shall be sufficient that the affidavit is upon information and belief.

"Sec. 4.  Upon the filing of the petition, a summons shall be issued, requiring the person having custody or control of the child, or with whom the child may be, to appear with the child at a place and time stated in this summons, which time and place shall not be less than twenty-four hours after service.  The parents of the child, if living and the residence is known to the petitioner, or its legal guardian, if there be one, and his residence is known to the petitioner; or, if there is neither parent nor guardian, or if his or her residence be not known, then some near relative, if his residence be known to the petitioner, shall be notified of the proceedings and in any case the judge may appoint some suitable person to act in behalf of the child; summons and notice may be served by the sheriff or by any duly appointed probation officer, either by reading the same to the person or persons, or by leaving a copy thereof at his usual place of abode, or with some person of his family of the age of ten years or upwards, and informing such person of the contents thereof.  The return of such summons and notice with indorsement of service by the sheriff or probation officer in accordance herewith shall be sufficient proof thereof.  If the person summoned as herein provided shall fail without reasonable cause to appear and abide the order

of the court or bring the child, he may be proceeded against as in case of contempt of court. In case summons cannot be served, or the party fails to obey the summons, and in any case when it shall be made to appear to the court that such summons will be ineffectual a warrant may be issued on the order of the court, either against the parent or guardian or the person having the custody of the child or with whom the child may be, or against the child itself.

"On return of the summons, or other process, or on the appearance of the child; with or without summons, or other process, in person, before the court and on the return of the service of notice, if there be any person notified, or as soon thereafter as may be, the court shall proceed to hear and dispose of the case in a summary manner. Pending the final disposition of the case the court may order the child to be retained in the possession of the person having charge of the same, or any other person, or to be kept in some suitable place provided by the city, county or state authorities.

"Sec. 5. The court shall have authority to appoint or designate, by, and with the consent of the county commissioners, one discreet person of good character to serve as probation officer during the pleasure of the court; said probation officers to receive compensation of fifty dollars per month from county fund, to be paid by county commissioners. In case the probation officer shall be appointed by any court, it shall be the duty of the clerk of the court, if practicable, to notify the said probation officer in advance, when any child is to be brought before the court; it shall be the duty of said probation officer to make such investigation as may be required by the court; to be present in court in order to represent the interests of the child when the case is heard; to furnish to the court such information and assistance as the judge may require; to take such charge of any child before and after trial, as may be directed by the court.

"Sec. 6. When any child, under the age of 16 years, shall be found to be dependent or neglected, within the meaning of this act, the court may make an order committing the child to the care of a suitable state institution or to the care of some reputable citizen of good moral character, or to the care of some training school or industrial school, as provided by law, or to the care of some association willing to receive it, embracing in its objects the purpose of caring for or obtaining homes for neglected or dependent children, which association shall have been accredited as hereinafter provided. The court may, when health or con-

dition of the child may require it, cause the child to be placed in a public hospital, or institution for treatment or special care, or in a private hospital or institution which will receive it for like purpose without charge.

"Sec. 7. In any case where the court shall award a child to the care of any association or individual in accordance with the provisions of this act, the child shall, unless otherwise ordered, become a ward, and be subject to the guardianship of the association or individual to whose care it is committed. Such association or individual, shall have authority to place such child in a family home with or without indenture, and may be made party to any proceeding for the legal adoption of a child and may by its, or his attorney or agent, appear in any court where such proceedings are pending and assent to such adoption. And such assent shall be sufficient to authorize the court to enter the proper order or decrees of adoption. Such guardianship shall not include the guardianship of the estate of the child.

"Sec. 8. In the case of a delinquent child, the court may continue the hearing from time to time and commit the child to the care or custody of a probation officer, or any other person, or may allow such child to remain in its home, subject to the visitation of the probation officer, such child to report to the probation officer as often as may be required; or the court may cause the child to be placed in a suitable family home, subject to the friendly supervision of a probation officer, and the further order of the court; or it may authorize the child to be boarded out in some suitable family home, in case provision is made by voluntary contribution or otherwise for the payment of the board of such child until a suitable provision may be made for the child in a home without such payment; or the court may commit the child, if a boy, to the training school for boys, or, if a girl, to an industrial school for girls; or the court may commit the child to any institution in the county incorporated under the laws of this state that may care for delinquent children or that may be provided by a city or county, suitable for the care of such children or to any state institution which may be established for the care of delinquent children; or the court may commit the child to the care and custody of some association that will receive it, embracing in its objects the care of neglected or dependent children, and that has been duly accredited as hereinafter provided. In no case shall a child beyond the age of sixteen years be committed to such an institution. A child committed to such an institution shall be subject to the control of the superintendent

thereof, and the said superintendent shall have power to parole such children under such conditions as he may prescribe.

"Every child who shall have been adjudged delinquent, whether allowed to remain at home, or placed in a home, or committed to an institution, shall continue to be a ward of the court until such child shall have been discharged as such ward by order of court, or shall have reached the age of twenty-one years, and such court may during the period of wardship cause such child to be returned to the court for further or other proceedings, including parole, or release from an institution; Provided, however, that notice of all applications to the court for such parole or release shall be given to the superintendent of such institution at least ten days before the time set for the hearing thereof, or the consent, in writing, of such superintendent to such parole or release shall be filed. The court may, however, in its discretion cause such child to be proceeded against in accordance with the laws that may be in force governing the commission of crime.

"Sec. 9. No court or magistrate shall commit a child under twelve years of age to a jail or police station, but if such child is unable to give bail it may be committed to the care of the sheriff, police officer, or probation officer, who shall keep such child in some suitable place which shall be provided by the city or county outside of the enclosure of the jail or police station. When any child shall be sentenced to confinement in any institution to which adult convicts are sentenced, it shall be unlawful to confine such child in the same building with such adult convicts, or to confine such child in the same yard or enclosure with such adult convicts, or to bring such child into any yard or building in which adult convicts may be present.

"Sec. 10. This act shall be liberally construed, to the end that its purpose may be carried out, to wit:. That the care and custody and discipline of the child shall approximate, as nearly as may be, that which should be given by its parents, and that, as far as practicable, any delinquent child shall be treated, not as a criminal, but as misdirected and misguided, and needing aid, encouragement, help and assistance.

"Sec. 11. All acts and parts of acts in conflict herewith are hereby repealed."

A similar law to this was passed by the Legislature of Pennsylvania in 1903 (P. L. 274). Among the objections raised to such act in the Supreme Court of that state was the following: "That the act contained more subjects than one, some of which

are not expressed in the title." The Supreme Court of Pennsylvania in *Commonwealth v. Fisher*, 213 Pa. St. 51, 62 Atl. 199, in discussing this proposition says: „

"No new court is created by the act under consideration. In its title, it is called 'An act to define the powers of an already existing and ancient court.' In caring for the neglected or unfortunate children of the commonwealth, and in defining the powers to be exercised by that court in connection with these children, recognized by the state as its wards requiring its care and protection, jurisdiction is conferred upon that court as the appropriate one, and not upon a new court."

And again:

"It is a mere convenient designation of the court of quarter sessions to call it, when caring for children, 'a juvenile court,' but no such court as an independent tribunal is created. It is still the court of quarter sessions before which the proceedings are conducted."

Pennsylvania has a constitutional provision similar to ours, relative to the title of legislative enactments; and, indeed, most, if not all, of the other states have such provision.

The question of the sufficiency of the title of legislative enactments has been frequently before the courts. The Supreme Court of California in *Ex parte Liddell*, 93 Cal. 633, 29 Pac. 251, holds that:          ,

"It is not necessary for the title of an act to embrace an abstract of its contents, but, if it contains a reasonable intimation of the matters under legislative consideration, it is sufficient to state the subject of the bill in general terms and with the fewest words, in accordance with general custom, to which the framers of the Constitution intended the Legislature to conform. Numerous provision having one general object fairly indicated by the title may be united, and when the general purpose of the act is declared, the details provided for the accomplishment of that purpose will be regarded as necessary incidents."

See, also, *Montclair v. Ramsdell*, 107 U. S. 147; *Commonwealth v. Fisher, supra.*

While we think the title to the act in question could have been more complete, without subjecting it to other criticism, yet it was sufficient for the purpose intended. All the provisions of

this act are for one object only—the care of delinquent and dependent children as expressed in the title.

It is next objected that the law is invalid, because it takes away the exclusive jurisdiction of the district court to try felony cases.

Section 10, art. 7, of the Constitution, confers on the district courts original, but not exclusive, jurisdiction, and even this jurisdiction is conferred, subject to the limitations of section 9, art. 7, which section confers original jurisdiction only until otherwise provided by law. This question has been thoroughly considered by this court in *Ex parte Whitehouse*, 3 Okla. Cr. 97, 104 Pac. 374; but no powers of the district court to try felony cases is taken away by the act in question. The juvenile court, as such, cannot try felony cases; nor does the act in question confer, or intend to confer, any such powers upon the county courts sitting in their capacity as juvenile courts. The Legislature in its wisdom by this law says that a child under sixteen years of age cannot be guilty of the commission of a crime, except in cases where it is shown that such child knew the wrongfulness of his acts at the time they were committed. The acts committed by such child, which in an adult would be a crime, under this statute, constitute juvenile delinquency only, except in cases of a serious character, when the juvenile court is authorized by the act, *supra,* in its discretion, to cause such child to be proceeded against in accordance with the law that may be in force governing the commission of crime.

Prior to the enactment of the law in question, the statutes provided:

"All persons are capable of committing crimes, except those belonging to the following classes: 1. Children under the age of seven years. 2. Children of the age of seven years, but under the age of fourteen years, in the absence of proof that at the time of committing the act or neglect charged against them, they knew its wrongfulness." (Sec. 2034, Snyder's Stat.)

The juvenile court law under consideration, in effect, provides that children under the age of sixteen are incapable of com--

mitting crime. But, in order that no great wrong should be done to society, the Legislature took the precaution to provide that a child brought before the juvenile court on a charge of delinquency, such court might, in its discretion, cause such child to be proceeded against in accordance with the law governing the commission of crime. See section 3, par. 2, act, *supra*. This provision contemplates an investigation by the juvenile court of the acts complained of with the view of determining whether or not the child committed them, and, if so, whether or not he knew the wrongfulness thereof in a criminal sense. And should the court find affirmatively, it is then within its discretion, under the law, to hold such child to be proceeded with in the manner provided by law in a court having competent jurisdiction of the offense committed, certifying to such court both its finding as to probable cause, and that the child *knew* the *wrongfulness* thereof. The finding of the juvenile court, or the county judge sitting as such, that the child knew the wrongfulness of his act, and was capable of committing the offense, and did commit it, does not relieve the state of the burden of proving that the child knew the wrongfulness of his act at the time of the commission thereof, upon the trial before a jury in a court of competent jurisdiction, as provided in subdivision 2, section 2034, Snyder's Statutes. The effect the juvenile court law under consideration has on said subdivision is simply to change the word "fourteen" to "sixteen," subsequent to the foregoing proceedings.

It is next urged that the Legislature had no right, under the Constitution, to enact the law in question.

We are of the opinion that the Legislature did have the right to enact the law. It is a fact, well known to all members of the legal profession, and a great number of our citizenship, that all laws relating to the commitment of minors to various institutions, whether for care and guardianship, or for purposes of restraint and reform, are entirely statutory, and have been uniformly upheld. Such provisions found no lodgement in the common law, as is the case with most of our criminal statutes. But the legal principle involved in the construction and application of these

statutes authorizing such commitments are founded on the common-law doctrine generally.

Commitments of children to juvenile institutions can be distinguished into three essential classes: Commitments as a punishment for crime; commitments where the proceedings are *quasi* criminal; and commitments for care and guardianship.

Statutes authorizing the commitment of juvenile offenders to houses of refuge and juvenile reformatories, instead of imprisonment, obtain in most states. In this class of cases, is it generally held that the statutes must receive the same construction as other penal statutes. Such a provision is also contained in the United States Statutes. (U. S. Rev. Stat. pars. 5544 and 5550.)

The proceedings in another class of cases, referred to *supra,* have been designated "*quasi* criminal." Statutory provisions are found in a number of the Codes of various states, authorizing the commitment of minors to reformatory institutions, upon application or complaint of parents, guardians, or other responsible persons, made before civil magistrates, alleging that the minor is incorrigible and beyond domestic control. Legislation of this kind is not unconstitutional. The object of the detention in these cases is not punishment, but reform and moral training, as is the purpose of the statute before us, and proceedings under statutes authorizing such commitment have been held to be valid, on the ground that the *parens patriae,* or sovereign right to care for the education of its members, belongs of strict right to the state, under whose sanction the custody or charge of the minor is thus transferred from the guardian, who declares his inability to fulfill the purposes of guardianship. See *Roth v. House of Refuge,* 31 Md. 329; *Ex parte Crouse,* 4 Whart. (Pa.) 9.

It is no light matter to compel a boy or girl to spend his or her childhood days in restraint; and there should be clear proof of the necessity of such a course before a child is committed under the provisions of this act. Sections 5, 6, 7, and 8 of this law provide for a system of probation, the object of which is to help the child through a correctional method, by the state placing itself in *loco parenti.* The treatment of a child con-

templated by this law is, as near as may be, that which should be given by its parents. The juvenile courts should, therefore, first exercise the authority conferred by the law, and place the child, where possible, on probation, either with the child's parents, when suitable, or where there are no such parents, with any other fit person of good moral character, to be supervised by the probation officer, who is required to make frequent reports to the court. This act should be liberally construed in favor of the welfare and best interest of the child; and only for grave offenses, such as affect the general welfare of the public, should a child be proceeded against in accordance with the laws that may be in force governing the commission of crime. The rights of the child whose welfare is at stake, as well as the rights of his parents, must be duly regarded and protected by the court.

The last class of cases referred to *supra*, for which children may be committed to juvenile institutions, includes all those cases in which the state intervenes in its capacity of *parens patriae*, and through its officers assumes the care and education of children who are either without a guardian or place of abode, commonly designated as "vagrant and destitute minors," and in some jurisdictions those who are neglected, illtreated, and not properly cared for by their guardians, appointed or natural. In this state, this class are cared for in the Orphans' Home at Pryor Creek.

Interference or intervention by process of law in matters affecting the care and guardianship of minors is carried on to an extent in the United States that is unknown to many legal systems of other portions of the civilized world. For this reason, it is interesting and instructive to inquire into the precise ground upon which such action rests, and the direction and extent it may properly assume. The fundamental doctrine upon which governmental intervention in all such cases is based is that the moment a child is born he owes allegiance to the government of the country of his birth, and is entitled to the protection of that government for his person, as well as his property. In order to discharge this duty of protection, the government, by way of

safeguard and for the benefit of the infant, places him under guardianship; but it is only that there may be best secured to him the assistance and protection of law, and that he may acquire that education which will enable him afterwards to discharge the duty which he owes to his country, as well as to himself. The authority of all guardians is derived from the state, such guardians being appointed when the occasion for them arises, or is expected to arise. The nature of a guardianship is that of a trust, the execution of which is at all times superintended by the state.

It has been held by the highest courts of Massachusetts, Ohio, Wisconsin, New York, and others, that the Legislature not only has the power to enact such provisions as those under consideration, but that it is the duty of the state, in its character of *parens patriae,* to do so. The performance of such duty is justly regarded as one of the most important governmental functions, and a constitutional limitation must be so understood as not to interfere with its proper and legitimate exercise. See *Roth v. House of Refuge, supra; Prescott v. State,* 19 Ohio St. 184; *Ex parte Nichol,* 110 Cal. 653. The cases cited do not all discuss the identical question under consideration, but the reasoning applies with full force.

It is evident that this law was enacted by the Legislature in the interest of the highest principles of humanity, and for the greatest and best interests of the childhood of the state, especially that type of children who need the help and guardianship of the highest power of the state. It is but natural that the jurisdiction in this class of cases should be conferred on the county courts. The statutes already existing at the time of the passage of this law conferred upon the county courts the duty of looking after the property rights of children. In fact, the county court is properly the children's court, and the selection of the judges of these courts is usually had with this in view.

Again, it is objected that this statute attempts to punish violations of the federal laws. This point was not extensively argued. We have already determined that this is not a punitive statute, but a reformative one. It is not the purpose or intention

of this statute to punish for the violation of any specific provision of any Code, but merely to provide that a child who, without knowing the wrongfulness of his acts, commits such acts, is guilty not of an infraction of those provisions of either nation, state, or municipality, but is to be adjudged and considered a juvenile offender; in other words, a delinquent child as defined in the act itself. No provision of the statute under consideration prescribes a penalty for the violation of any statute, nor is a child committed for that purpose, but for the purpose of reformation, education, and development.

There is one other proposition raised by this petition that we deem it well to dispose of. That is the question of the jurisdiction of the district, or other courts than the juvenile, courts to commit juvenile offenders to the Training School for Boys. Section 8539, Snyder's Statutes, is as follows:

"When complaint, the facts of which are established by due proof, shall be made to a magistrate or justice, as aforesaid, that any boy between the ages of seven and sixteen years is a proper subject for the guardianship of the State Training School, in consequence of vagrancy, or incorrigibly vicious conduct, and that from the moral depravity or other insuperable obstacle on the part of the parent, guardian, or next friend, in whose custody such boy may be, such parent, guardian, or next friend, is incapable or unwilling to exercise the proper care and discipline over such incorrigible or vicious boy, such magistrate or justice, as the case may be, shall commit such boy to the State Training School for such term as he shall deem proper, within the limits prescribed in a previous section of this act."

Section 8543, Snyder's Statutes, is as follows:

"All boys committed under this act shall be committed until they arrive at the age of twenty-one, unless sooner reformed. Boys not over sixteen nor under ten years of age may be committed to said school by any judge of the police court, county judge, or district judge, or the judge of any court of record having jurisdiction in criminal cases which may be created by law, or any conviction of any offense against the laws of the state and any such boy convicted of any crime or offense, the punishment of which is in whole or in part confinement in the jail or penitentiary may, at the discretion of the court giving sen-

tence, in lieu of being sent to the jail or penitentiary, be committed to the State Training School."

These provisions apparently confer this jurisdiction, but these sections were enacted prior to the enactment of the law in question, and are directly in conflict with the fundamental purpose of many of its provisions.

This act, in addition to providing for the jurisdiction of the county court sitting as a juvenile court, has many other mandatory provisions, such as requiring the keeping of separate dockets, journals, and reports to the Commissioner of Charities and Corrections, the appointment of probation officers, and the procedure in general to be had in dealing with children, such as are not provided for nor contemplated in any other court of the state.

Section 11 of the act before us provides that: "All acts and parts of acts in conflict herewith are hereby repealed." The general provisions of Snyder's Statutes, *supra,* were sufficient to confer this right upon district and other courts, but the provision last quoted clearly repeals them. Should the general provisions of sections 8539 and 8543 stand, the very purpose of the law under consideration would be destroyed. It was evidently the intention of the Legislature to give this right to commit children to the State Training School for the purposes of reform, education, and development, into the exclusive control of the juvenile courts, and we are impelled to the conclusion that this is the effect of the law as it stands. It is also provided that a child committed under the provisions of this act shall be committed until he is twenty-one years of age, unless sooner reformed. A commitment to the State Training School for Boys for a definite period is not warranted by this statute. Commitment should follow statutory provisions. In the case before us the child was committed for two years.

The issues raised by the petition were orally argued and have been exhaustively briefed by counsel, on behalf of petitioner, and extensively argued by counsel, on behalf of the state.

The questions here discussed were not raised before the district court of Pontotoc county, and the attention of that court was not called to any of the provisions of this act. Had that been done, it is probable that this cause would not be here on *habeas corpus.*

From the views expressed upon the questions raised by the petition in this case, we conclude that the statute is constitutional and valid in every respect. See *Commonwealth v. Fisher, supra; Ex parte Nichol, supra; State v. Reed,* 123 La. 411, 49 South. 3; *Blanchard v. Raines,* 20 Fla. 467; *Baldwin v. Bennett,* 6 Rob. (La.) 309.

Let the writ issue, and petitioner be discharged from the custody of the sheriff of Pontotoc county. Said sheriff is ordered to deliver the prisoner into the custody of the juvenile court of said county, to be proceeded with according to law.

FURMAN, P. J., and DOYLE, J., concur.