# CLIFFORD WILSON v. STATE.

No. A-9391.   Aug. 26, 1938.

(82 P. 2d 308.)

Ward, Justus & Ward, of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Sim T. Carman, Co. Atty., of Pawhuska, for the State.

BAREFOOT, J.   The defendant was charged by information in the district court of Osage county with the crime of murder, was convicted and sentenced to serve a life term in the penitentiary, and appeals.

The defendant was jointly charged with Cecil Harris and Marvin Hampton with the murder of Charles Miller in Osage county, on the 22d day of March, 1930.   He was arrested on this charge on the 14th day of November, 1936, and the information was filed against him on the 1st day of February, 1937, nearly seven years after Charles Miller was found dead by the side of the road near Tulsa, in Osage county.   His arrest was caused by reason of the fact that Marvin Hampton, who was indicted with him and who had served a term in the penitentiary, voluntarily appeared at the Tulsa police headquarters and informed them that he had participated in the murder of Charles Miller, and implicated his codefendants, Clifford Wilson and Cecil Harris.   Marvin Hampton was used by the state as a witness against the defendant, and it was principally upon his testimony that the defendant was convicted.

Defendant, in his petition in error, assigns 20 grounds for a reversal of this case, and files a brief containing 339 pages, and a reply brief of 34 pages in support thereof. The first assignment of error is that the district court of Osage county did not have jurisdiction to try the defendant upon this charge, for the reason, that no proceedings had been instituted in the juvenile court of Osage county to determine the criminal responsibility of the defendant at the time of the alleged offense.   This fact was called to the attention of the trial court by defendant entering a special appearance, and filing a motion challenging the jurisdiction of the district court, as follows:

"Comes now Clifford Wilson, defendant, appearing specially and solely for the purpose of pleading to the jurisdiction of this court in the action brought by the plaintiff, state of Oklahoma, and denies that this court has any jurisdiction of the person of said Clifford Wilson for the reason that on the 22d day of March, 1930, at the time it is alleged in the information in this case that Charles Miller was killed, said defendant was a juvenile, a minor under the age of 16 years; that this defendant is charged with the commission of a felony, which is alleged to have been committed before the said defendant reached the age of 16 years.

"In support hereof, defendant states to the court that this court is attempting to exercise original jurisdiction of this defendant's person before such time as the juvenile court of this county has inquired into and passed upon the mental capacity and criminal responsibility of said defendant at the time the alleged crime was committed, and before the juvenile court of said county has certified its findings regarding his criminal responsibility and mental capacity at the time alleged in said information to this court."

When the case was called for trial and before the jury was impaneled, the trial court asked counsel for defendant if he had any evidence to submit in support of the motion filed challenging the jurisdiction of the court. To this counsel replied that he did, and the defendant was placed upon the stand in support of the motion, and testified that he was born on the 24th day of October, 1914 (this would have made him 15 years of age at the time it was alleged the offense was committed) ; that he received his information from his mother and father and had always been taught by them that this was his correct birthday. On cross-examination, he was questioned at length by the county attorney, and certain documents were offered in evidence by the state as a part of the cross-examination, by which it sought to show that defendant was 16 years of age at the time of the alleged offense and not 15 as he contended. All of this evidence was taken before the court on the motion, and prior to the time the

jury was impaneled. At the time of this hearing, it evidently was the intention of the court to pass upon this motion before the jury was impaneled to try the case. After the evidence was submitted the record reveals the following proceedings:

"Mr. Justus: We have other witnesses that have been subpoenaed and are expected to come with some of those deputy sheriffs from Tulsa county, who are not here yet. Mr. Carman: We announce ready. We have enough witnesses and we have definite information that the other witnesses are on the way. The Court: Do you gentlemen for the defendant have any further proof now on this proposition of age. Mr. Justus: We will have the testimony of Mrs. Wilson with the records made in 1930. It is through no fault of ours that she is not here. We know that she has been served. The Court: We just cannot be waiting here. Mr. Justus: Unless the state has some objection it is satisfactory with us that the court take this matter under advisement, and if during the course of the trial there is further evidence submitted on the proposition to satisfy the mind of the court, Your Honor can then pass on it. The Court: That might be a very good solution of it. I think when there is any serious question with reference to the age of the defendant, while I have not looked up the authorities on it, I rather think that is a question that might be submitted to the jury. Mr. Ward: I think Your Honor is right about that. Mr. Carman: It has been my opinion that this matter should be taken care of on the introduction of evidence. The Court: Well, we will proceed to the trial of the case, if the defendant is ready, and if there is any further evidence to be offered with reference to age I will hear it later. Mr. Justus: Has the state announced ready? Mr. Carman: The state has announced ready. Mr. Justus: The defendant wishes to file an affidavit of continuance in this case. Your Honor may read it. The Court: Have you furnished a copy of it to counsel? Mr. Justus: I have. Exhibit A to the affidavit is not attached; the sheriff has not returned the original to Osage county. The Court: What do you say about this motion, gentlemen? Mr. Carman: We would like to use Mr. McKenzie as a witness in opposition to the motion. The Court: Let him be sworn."

The motion for continuance was presented and evidence taken thereon by both the state and the defendant. The motion was overruled by the court, and defendant excepted. A severance was then asked by defendant, which was granted and defendant was placed on trial. At this stage of the proceedings a jury was impaneled to try the case and the introduction of evidence was commenced by the state. No announcement of any kind was made by the court as to the disposition of the motion challenging the jurisdiction of the court other than as heretofore stated in this opinion. At the conclusion of the trial the court submitted instructions to the jury, instruction No. 2 being as follows:

"You are instructed that before you commence the consideration of the question of the guilt or innocence of the defendant Clifford Wilson, it is your duty to consider first the question of the age of the defendant at the alleged date of the commission of the alleged crime, to wit, March 22, 1930.

"In this connection, you are advised that if you find from the evidence in this case that upon said date the defendant Clifford Wilson had not reached the age of 16 years, it will be your duty to so find in an appropriate verdict which will be submitted to you herewith for your finding upon that proposition.

"If you find from the evidence, facts and circumstances in proof that the defendant Clifford Wilson upon the date of the alleged commission of the crime herein charged was of the age of 16 years, you will then proceed to determine the question of his guilt or innocence, in accordance with the instructions which follow."

In connection with this instruction a special verdict was submitted to the jury as follows:

"We, the jury, drawn, impaneled and sworn in the above-entitled cause, do upon our oaths find that on March 22, 1930, the defendant Clifford Wilson was under the age of 16 years."

The jury, in response to the general charge given by the court, found the defendant guilty and assessed his punishment at confinement in the state penitentiary for the term of his natural life. The special verdict was returned unsigned.

It is the contention of defendant that where the issue was raised, as it was in this case, as to the age of defendant, the district court did not have jurisdiction to try him until a hearing had been had by the juvenile court of Osage county and a determination made by the juvenile court as to his probable guilt and capacity to commit such a crime, and that until the juvenile court has so acted, and certified to the district court its findings, directing that the district court proceed against the defendant in accordance with the law that was in force governing the commission of crimes in this state, the district court was without jurisdiction to so act. The law relied upon by the defendant to support this contention is the Act of the Legislature of 1909, the same being chapter 14, art. 8, p. 185, which defines who are "dependent" and "delinquent" children and creates the "juvenile court" which is the county court in this state. Section 1729, Okla. Stats. 1931, 10 Okla. St. Ann. § 101, being the above act, provides:

"This article shall apply to any child under the age of 16 years not an inmate of a state institution incorporated under the laws of this state. * * * The words 'delinquent child' shall include any child under the age of 16 years who violates any law of the United States, or of this state, or any city or town ordinance. * * * Any child committing any of the acts herein mentioned shall be deemed a delinquent child and shall be proceeded against as such in the manner herein provided. A disposition of any child under this article or any evidence given in such cause, shall not in any civil, criminal or other cause or proceedings whatever in any court be lawful or proper evidence against such child for any purpose whatever, except in subsequent cases against the same child under this article."

The complete act, 10 Okla. St. Ann. § 101 et seq., then gives the county court full and complete jurisdiction over male children under sixteen years of age and female children under eighteen years of age, with the power to place them in homes, suitable state institutions, or to the care of some reputable citizen of good moral character or other places as designated by the court, and to maintain jurisdiction until they reach the age of 21 years. The act also provides that the juvenile court may upon request give to the parents or guardian of such child, the opportunity of having any question of fact passed upon by a jury, and further provides for the keeping of a book by the county judge or his clerk to be known as "the juvenile docket." A reading of the complete act reveals that it was the intention of the Legislature to give to the county judge, as a juvenile court, full and complete jurisdiction of children under the age prescribed by its terms. It is a complete statute, enacted in accordance with the best thought of this age, looking to the protection of the child, to the end that he may not be confined within prison walls of this state to there be associated with hardened criminals, until an opportunity be given for reformation or redemption, or until the court, after a careful consideration of the facts comes to the conclusion that the crime with which he might be charged was of such nature, or that his conduct and moral character was such that he should be tried in accordance with the laws of which it is charged he had violated. In accordance with this, it is provided in section 1740, Okla. Stats. 1931, 10 Okla. St. Ann. § 112, of the act as follows:

"The court may, however, in its discretion, cause such child to be proceeded against in accordance with the laws that may be in force governing the commission of crime."

Thus giving the juvenile court the right and power, after an investigation, to certify to the court having

jurisdiction, the authority to proceed against said defendant in accordance with the laws with which he is charged with having violated. The act above cited was the act creating the juvenile court, and since that time this court has had an opportunity to pass upon different phases of the act. In the many cases decided the exact question here presented has not been passed upon, but the opinions heretofore rendered have so construed the same, that there is little doubt as to the construction that has been placed thereon, and from that construction what the decision of this court ought to be in deciding the question now before it. Counsel for defendant, in their brief, have cited and quoted liberally from those opinions in support of their contention. The brief filed by the state in this case does not in any way refer to the question of jurisdiction raised by the defendant, and not one word is said therein, nor a single authority cited by way of reply to the strenuous contention of the defendant upon this jurisdictional question.

One of the first cases in which it was up for consideration was the case of In re Powell, 6 Okla. Cr. 495, 120 P. 1022. In this case the constitutionality of the act was challenged and Judge Armstrong upheld the constitutionality thereof (Commonwealth v. Fisher, 213 Pa. 48, 62 A. 198, 199, 5 Ann. Cas. 92; Ex parte Liddell, 93 Cal. 633, 29 P. 251; Montclair Township v. Ramsdell, 107 U. S. 147, 2 S. Ct. 391, 27 L. Ed. 431); and to the objection that the law was invalid, because it took away the exclusive jurisdiction of the district court to try felony cases, held that it did not do so, saying (page 505, page 1026 of 120 P.):

"The juvenile court, as such, cannot try felony cases; nor does the act in question confer, or intend to confer, any such powers upon the county courts sitting in their capacity as juvenile courts. The Legislature in its wisdom by this law says that a child under 16 years of age cannot be guilty of the commission of a crime, except in

cases where it is shown that such child knew the wrongfulness of his acts at the time they were committed. The acts committed by such child, which in an adult would be a crime, under this statute, constitute juvenile delinquency only, except in cases of a serious character, when the juvenile court is authorized by the act, supra, in its discretion, to cause such child to be proceeded against in accordance with the law that may be in force governing the commission of crime.

"Prior to the enactment of the law in question, the statutes provided:

" 'All persons are capable of committing crimes, except those belonging to the following classes: 1. Children under the age of seven years. 2. Children of the age of seven years, but under the age of fourteen years, in the absence of proof that at the time of committing the act or neglect charged against them, they knew its wrongfulness.' Section 2034, Snyder's Sts. [21 Okla. St. Ann. § 152].

"The juvenile court law under consideration, in effect, provides that children under the age of 16 are incapable of committing crime. But, in order that no great wrong should be done to society, the Legislature took the precaution to provide that, a child being brought before the juvenile court on a charge of delinquency, such court might, in its discretion, cause such child to be proceeded against in accordance with the law governing the commission of crime. See section 3, par. 2, act, supra. This provision contemplates an investigation by the juvenile court of the acts complained of, with the view of determining whether or not the child committed them, and, if so, whether or not he knew the wrongfulness thereof in a criminal sense. And should the court find affirmatively, it is then within its discretion, under the law, to hold such child to be proceeded with in the manner provided by law in a court having competent jurisdiction of the offense committed, certifying to such court both its finding as to probable cause, and that the child knew the wrongfulness thereof. The finding of the juvenile court, or the county judge sitting as such, that the child knew the wrongfulness of his act, and was capable of committing the offense, and did commit it, does not relieve the state of the burden of proving that the child

knew the wrongfulness of his act at the time of the commission thereof, upon the trial before a jury in a court of competent jurisdiction, as provided in subdivision 2, § 2034, Snyder's Statutes."

The court next had the question under consideration in the case of Ex parte Hightower, 13 Okla. Cr. 472, 165 P. 624. The opinion by Judge Doyle, after quoting with approval the opinion in the case of In re Powell, supra, said (page 482, page 627 of 165 P.) :

"Under the provisions of this act, a child under 16 years of age cannot be guilty of the commission of a crime, except in cases where it is shown and determined by the juvenile court of the county wherein the crime is alleged to have been committed that such child knew the wrongfulness of its acts at the time they were committed, and such a determination is a necessary prerequisite to the jurisdiction of a district court to try a child under the age of 16 years upon an information charging a felony, and in addition thereto the child so charged was by the judge of said court sitting as an examining and committing magistrate, held to answer before the district court. The return in this case shows that no such proceedings were had before the juvenile court of Grady county, and that no evidence was taken before said court or the judge thereof as to the petitioner's capacity to commit the crime charged in the information which was filed in the district court of Grady county charging the petitioner with the crime of murder. It follows that the district court of Grady county was without jurisdiction of said information, and was without jurisdiction to render the judgment and sentence under which the petitioner is now held in custody."

In the case of State v. Alexander, 18 Okla. Cr. 546, 196 P. 969, an attempt was made by the superior court of Creek county to assume jurisdiction where the defendant was charged with the crime of murder and the superior court of Creek county attempted to act in the capacity of a juvenile court and made a finding to the effect that the defendant was probably guilty of the crime

charged and had capacity to commit the crime, the court says:

"The trial court held that the superior court of Creek county had no jurisdiction to inquire into the probable guilt of a juvenile offender, or into his capacity to commit a crime triable in that county, and for the reason that defendant had never been accorded a preliminary examination into those questions by a court of competent jurisdiction, quashed the information.

"We think the holding of the district court in this respect was correct. An examination of the act of March 24, 1909 (Laws 1909, c. 14, art. 8), creating the juvenile court and prescribing the jurisdiction thereof, clearly places the jurisdiction to inquire into the matter of the probable guilt and capacity of a juvenile offender under the sole jurisdiction of the county court. It was never the legislative intent to have, in some counties where superior courts exist, two juvenile courts, and only one such court in counties where no superior courts were created. It is apparent from the act itself that there is provided one juvenile court in each county of the state, and that jurisdiction is in the county court. Ex parte Hightower, 13 Okla. Cr. 472, 165 P. 624; In re Powell, 6 Okla. Cr. 495, 120 P. 1022."

In the case of Ex parte Parnell, 19 Okla. Cr. 273, 200 P. 456, Judge Bessey, in the opinion, says (page 458):

"The question here before this court is whether the district court of Comanche county or the officers of the court issuing the process under which the defendant is detained had jurisdiction of the defendant and the subject-matter involved, and acted within that jurisdiction in issuing and serving the commitment, incarcerating the defendant in the state penitentiary at Granite, or, in other words, whether the district court had jurisdiction to try the defendant, an infant under the age of 16 years, without first according him a preliminary investigation of the question of probable guilt and capacity to commit crime, made by the juvenile court of Comanche county."

The court, after an analysis of the entire act and a review of the cases heretofore cited, says:

"As to all juvenile offenses, the district court is a court of limited or special jurisdiction, and not a court of general jurisdiction. 23 Cyc. 108, and cases there cited; 15 R.C.L. 883; Furgeson v. Jones, 17 Ore. 204, 20 P. 842, 3 L.R.A. 620, 11 Am. St. Rep. 808."

The court further says:

"As has been seen, under the provisions of our juvenile statutes, an infant under the age of 16 years is presumed to be incapable of committing crime, and that presumption remains until the juvenile court finds to the contrary. In all cases, where the county court, sitting as a juvenile court, finds that any child knew the wrong-, fulness of his acts and is probably guilty of crime, then and then only is the district court empowered to deal with such delinquent child. And where the record is silent upon the question of an inquiry into the age of the child and of the mode and manner of acquiring jurisdiction, applying the rule above stated, any presumption that the court had jurisdiction of such juvenile offender is at least a rebuttable one, and a proper subject of inquiry by this court in a habeas corpus proceeding, challenging the jurisdiction of the district court.

"This defendant was an infant, as we think under the age of 16 years, and a delinquent child, within the exclusive original jurisdiction of the juvenile court. At any rate, he was without the advantage of advice of counsel, guardian, or parent. He was charged with and arrested for larceny, along with other companions, on one day; on the day following he was given an opportunity to have a preliminary hearing, which he waived; and on the same day he was taken into district court, where he entered a plea of guilty and was sentenced to imprisonment for a term of two years in the state penitentiary at Granite, where he is now incarcerated with others, some of whom are hardened, habitual criminals. The possibilities are great that by the end of his term he will be like them, and will go out into society an undesirable citizen, possibly an habitual criminal. Why the defendant waived a preliminary hearing, and why he en-

tered a plea of guilty does not appear. Not having the advantage of counsel, it may be presumed that he did so on the advice of the county attorney or his co-defendants. Under the circumstances, he was hardly capable of determining these matters without advice from some one.

"One of the purposes of the juvenile law was to prevent this very situation, and to construe the force and effect of the juvenile law in any other manner would make it ineffectual, and would not be in accord with the express purposes recited in the act. The juvenile act expressly provides that it shall be liberally construed, and in our opinion no other court has jurisdiction, by any fiction or presumption, to deal with juvenile offenders, in the face of the express and necessarily implied provisions of the juvenile law."

This statute has been before this court in other cases and the decisions heretofore referred to have been followed. See Ex parte Alton, 38 Okla. Cr. 383, 262 P. 215; Ex parte Bonitz, 30 Okla. Cr. 45, 234 P. 780; Ex parte Humphries, 31 Okla. Cr. 172, 237 P. 624; Ex parte Pyzer, 29 Okla. Cr. 156, 232 P. 962. Other states having similar statutes have given the same construction as has this court in construing the statute of this state. State v. Dunn, 75 Kan. 799, 90 P. 231; State v. Coble, 181 N. C. 554, 107 S. E. 132; Harris v. State, 24 Ala. App. 59, 129 So. 795; McQueen v. Commonwealth, 196 Ky. 227, 244 S. W. 681.

If there is any difference in the facts in the cases heretofore cited and the case at bar, it is that in those cases it was an admitted fact that the defendant was under the age of 16 years at the time of the alleged offense, and in this case it was a disputed fact, and the question of defendant's age in the case at bar was submitted to the jury. We think the rule announced in the cases cited, when properly read, hold that under the provisions of the act creating the juvenile courts that it is necessary for this court to pass upon the question of defendant's probable guilt, the nature and disposition

of the crime committed, the character of the defendant, and any other matter which he considers necessary, and to pass upon these questions at a preliminary investigation, and after this investigation is completed, to certify his findings to the district court, before the district court shall have jurisdiction to try defendant, where the issue has been raised as to his age, as was done in this case. We think this was clearly the intention of the Legislature at the time the juvenile courts were created. It is in keeping with the trend of modern times in the treatment of juvenile offenders and with the spirit and purpose of the act. How easy it would have been for the court to have complied with this provision of the law. If when the motion was filed, the court had submitted it to the juvenile court, it could have been heard immediately, and if the defendant was such a character as the state contends he is, and as the record tends to reveal, and taking into consideration the nature of the offense with which he is charged, the juvenile court could, and no doubt would have found, that it was a case where the defendant should be proceeded against in accordance with the law of the land as provided in the act and would have so certified to the district court. The proceedings in the case at bar were, to say the least, of such a nature that the rights of the defendant were not fully protected. A reading of the record reveals that when the motion was to be heard involving the jurisdiction, it was the intention of the court to hear and settle the same as a matter of law before the jury was impaneled to try the defendant. Evidence was taken upon this motion including the evidence of the defendant. The record does not reveal that the court at any time ever ruled or passed upon the motion, but only stated:

"While I have not looked up the authorities on it, I rather think that is a question that might be submitted to the jury."

The case was then called for trial and the court announced:

"The Court: Well, we will proceed to the trial of the case, if the defendant is ready, and if there is any further evidence to be offered with reference to age, I will hear it later."

From this remark of the court, there cannot be much doubt that at this time the court still had the intention of deciding the question of age as a matter of law. The record does not disclose that the question of age was at any other time questioned or presented, until the court gave his charge to the jury submitting the question to them, and giving them a special verdict as above indicated. Certain evidence was offered by the state, and the defendant, with reference to the age of defendant. The defendant did not testify in the case, and the jury was not given the benefit of his testimony on the question of age. The court not having ruled on the motion, and the jury not having been impaneled at the time this evidence was given before the court, did not have the benefit of the same in the consideration of their verdict as to the age of the defendant. The exhibits offered by the state on cross-examination were submitted to the jury. This by reason of the fact that defendant had testified as to his signature on certain instruments. If the court decided to submit this issue to the jury, he should have submitted all of the testimony on the question of age, including the testimony of the defendant; but, as before indicated, we do not think under the decisions of this court this was a matter for the consideration of the jury under the law of this state. This question should have been passed upon by the county judge of Osage county, sitting as a juvenile court, in the manner prescribed by law. The construction placed upon the language used in the prior decisions of this court is borne out by the writer of the text upon "Infants" in 31 C. J., p. 1104, sec. 229, where it is said:

"In most of the states the jurisdiction to determine this preliminary question exclusively resides on the juvenile court, in which case no other court has jurisdiction to initiate, try, or review on appeal a proceeding against a delinquent child unless proceedings have been first had in the court exercising juvenile jurisdiction."

The writer, in citing cases to substantiate this statement, cites the following Oklahoma cases as upholding this doctrine: In re Powell; Ex parte Parnell; State v. Alexander; Ex parte Hightower, heretofore cited.

We think that this case presents an issue which clearly exemplifies the wisdom of the Legislature in passing this law. Here the trial court presented the question of the age of the defendant, which was a controversial point, to the jury. The jury had heard all of the evidence offered by the state against the defendant as to his participation in the crime for which he stood charged. After hearing these facts, it does not occur to us that the jury would be in a frame of mind to pass upon the question of the age of the defendant, as would a judge of the county court, sitting as an examining magistrate, elected by the people, and with a sworn duty to protect both the rights of the state and the defendant. We believe that the Legislature had this in mind when it provided that this question should be presented and determined by the county judge, before a defendant could be tried in the district court.

Many assignments of error are urged by defendant for a reversal of this case which it now becomes unnecessary to discuss, as they will not occur at a retrial thereof. The motion for continuance was based on the absence of the witness Ruth Weldon who was the only eyewitness to the killing. If she is ever to be located, it certainly should be done before this case is retried.

We have read the brief and the authorities cited by defendant which are based upon the proposition that cer-

tain evidence offered was hearsay, and that no proper predicate was laid therefor, and was therefore incompetent. An examination of the record reveals that this case would, in all probability, have to be reversed by reason of the introduction of hearsay evidence and for which no proper predicate was laid.

The record prepared by Police Officer Squires which showed a copy of the pawn shop record, and which the evidence showed had been changed from "Wilson" to "Cliff Wilson," the name of the defendant, should not have been permitted to be introduced. Other instruments were offered in evidence for which no proper predicate was laid, and quite a bit of hearsay evidence was permitted to be offered. In a retrial of this case counsel for the state should give careful consideration to these questions, and we are sure the trial court will follow the law carefully in permitting the introduction of evidence.

For the reasons above stated, the judgment of the district court of Osage county is reversed, and it is further ordered if defendant is now confined in the penitentiary of this state, that he be returned to the custody of the sheriff of Osage county to abide the action of the juvenile court of said county, who shall promptly have a hearing upon the question of the age of defendant at the time of the commission of the alleged offense, and for such further order as to the court is deemed just and proper under the law.

DAVENPORT, P. J., and DOYLE, J., concur.