## Ex parte OWEN LEWIS.

No. A-10860.   Dec. 17 1947.

(188 P. 2d 367.)

326

William F. Hillhouse and Andrew Wilcoxen, both of Muskogee, for petitioner.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for respondent.

BRETT, J.   Petitioner, Owen Lewis, a minor, filed in this court his petition for writ of habeas corpus, alleging that he was unlawfully restrained by Colonel W. E. Downs, superintendent of the State Training School for White Boys at Helena, Okla.

He alleges that such restraint was under and by virtue of an order of commitment made and entered on March 26, 1947, by John D. Gulager, judge of the county court in and for Muskogee county, Okla.; said commit-

ment, omitting the caption, being substantially as follows, to wit:

"Now on this 26 day of March, 1947, the above case coming on for hearing and the same being heard and the court being advised in the premises, finds that the allegations of the petition herein are true.

"It is therefore considered, ordered, adjudged and decreed by the court that said juvenile, Owen Lewis, be and is hereby committed to the custody of State School at Helena Oklahoma and there to be held and cared for as provided for by law, or until further order of the court.

"Witness my hand and seal of said court.

"John D. Gulager, Judge of the Juvenile Court."

He further alleges that he was arrested upon a warrant, based on a complaint filed in the county court of Muskogee, Okla., on the 18th day of November, 1946; the charging part is in words and figures as follows, to wit:

"That Owen Lewis, in the county and state aforesaid, on the day and year aforesaid, did, knowingly, wilfully, forcibly, unlawfully, wrongfully and feloniously have sexual intercourse with and carnally know and rape one Mary Hefley a female not the wife of him, the said Owen Lewis, without her consent and against her will and who was then and there a female under the age of fourteen (14) years, to wit: of the age of ten (10) years."

That on or about November 19, 1946, an amended complaint was filed in said county court charging the petitioner with the offense of rape in the first degree. The charging part of said complaint is in words and figures as follows, to wit:

"That the said Owen Lewis in the county and state aforesaid on the day and year aforesaid did knowingly, wilfully, wrongfully, unlawfully, forcibly and feloniously, make an assault in and upon one Mary Hefley, a female,

not the wife of him the said Owen Lewis and by use of force and putting in fear, did, then and there unlawfully, wrongfully and without her consent and against her will and by means of force overcoming her resistance, rape, ravish and carnally know her, the said Mary Hefley."

The petitioner further alleges that on or about the 19th day of November, 1946, Walter Smith, county probation officer in and for Muskogee county, Okla., filed a petition in juvenile court, charging that the petitioner "did commit the crime of Rape, First Degree," and praying that the petitioner be committed to the State Training School for White Boys at Helena, Okla. Omitting the caption of said petition identifying Owen Lewis as the subject, and alleging his age as 14 years, the charging part of the petition is in words and figures as follows, to wit:

"That said minor did commit the crime of (Rape 1st Degree) That Owen Lewis in the County and State aforesaid on the day and year aforesaid did knowingly wilfully unlawfully and feloniously have sexual intercourse with and carnally know and rape one Mary Hefley a female, not the wife of him, the said Owen Lewis and then and there a female under the age of fourteen (14) years to-wit of the age of ten years (10)."

Further, petitioner alleges that on or about November 25, 1946, he entered a plea of not guilty to the offense charged in the preliminary complaint and was examined thereon.

From the findings in the court's order, hereinafter set forth, it appears the court was actually considering the hearing on the petition for juvenile delinquency. On this hearing the petitioner offered his birth certificate showing his age to be 14 years. This automatically reduced the charge to second degree rape. Frazee v. State, 79 Okla. Cr. 224, 153 P. 2d 637, 638, holding:

"Under the Oklahoma law, 21 O. S. 1941 § 1114, a male under the age of 18 years cannot be guilty of rape in the first degree."

As a result of said examination the Honorable John D. Gulager, judge of the county court, ordered him to be held to answer for the crime of "Rape in The Second Degree" in the district court of Muskogee county, Okla.; said order of commitment to the district court, omitting the caption, is in words and figures as follows:

"Now, on this, the 25th day of November, 1946, the same being a regular court day, this cause coming on to be heard before me John Gulager, Judge of the above named court, and the petitioner herein appearing by Chal Wheeler, Asst. County Attorney of Muskogee County, and the minor defendant being present in open court in person and by Andy Wilcoxen and William Hillhouse, his attorneys of record, and summons and notice having been served and returned as provided by law, and all parties announce ready for trial. Whereupon the court having heard the testimony of witnesses sworn and examined in open court and being fully advised in the premises, finds that Owen Lewis is a minor of the age of fourteen years at the time of the commission of the offense charged and that he is a juvenile delinquent within the meaning of the Statutes of this State. Further that a crime has been committed and the said Owen Lewis was capable of committing the crime charged and that there is probable cause to believe he did commit the same and that at the time of the commission of said crime he was capable of knowing, and did know, the wrongfulness of his said acts constituting said crime.

"Whereupon, premises considered, it is the order and judgment of the court that the said Owen Lewis be and he is hereby held to answer for the crime of Rape in the 2nd Degree in the District Court of this County and that he be proceeded against in all matters as though he had reached this majority."

"John D. Gulager, Judge of Juvenile Court".

The petitioner further alleges that on or about December 6, 1946, the county attorney of Muskogee county filed an information in the district court of said county, charging him with the commission of the offense of rape. That on or about the 26th day of March, 1947, E. A. Summers, district judge in and for Muskogee county, Okla., after examining him on said information, in open court, found that he was a minor of the age of 14 years, and that at the time of the alleged commission of the offense charged in said information, the petitioner lacked sufficient maturity and mental development to know the wrongfulness of his act in a criminal sense and ordered him returned and to be proceeded against in the juvenile court. Omitting the caption and other unnecessary recitals, the pertinent portions of said order are as follows, to wit:

"* * * Whereupon the court finds that Owen Lewis is a minor of the age of fourteen years at the time it is alleged that he committed the offense charged, and that he lacked sufficient maturity and mental development to know the wrongfulness of his act in the criminal sense.

"Whereupon, premises considered, and in view of the age of the defendant, it is the order and judgment of this court that the said Owen Lewis be and he is hereby ordered to answer for the crime with which he is charged in the County Court of this county and that he be proceeded against in that court as a juvenile.

"E. A. Summers District Judge."

Petitioner further alleges that since March 26, 1947, when the petitioner was returned from the district court to the county court, though repeated and timely requests have been made that the petitioner be granted a hearing and a trial by jury upon the juvenile delinquency charge, the Honorable John D. Gulager, sitting as juvenile judge,

has denied the same, in derogation of the petitioner's rights as provided under the Juvenile Act, Title 10 O. S. A. §§ 101-116d. Petitioner specifically alleges that the right to trial by jury upon the issue of juvenile delinquency has not been waived, either by the petitioner or by his attorneys. But, the record clearly shows that no demand was made for a jury in the first stage of the proceedings up to the point of adjudication of said Owen Lewis being a juvenile delinquent. The affidavit of the juvenile judge does show that the parties were advised that they were entitled to a jury.

The petitioner, in support of his petition, submitted the affidavit of Chester Norman, county attorney of Muskogee County, Okla., in which the affiant under oath said:

"That he is the County Attorney of Muskogee County, State of Oklahoma and that he knows of his own knowledge that the County Attorney and his assistants have not participated in any trial of the merits of the case of the State of Oklahoma v. Owen Lewis, minor, the same being No. 1801 in the County Court of Muskogee County.

"He further states that the minor, Owen Lewis, has received a preliminary examination in said County Court but no trial of the merits of any charge prepared by the office of the County Attorney."

He also attaches in support of his petition the affidavit of Chal Wheeler, assistant county attorney of Muskogee county, Okla., reading substantially in words and figures as follows, to wit:

. "That he is Assistant County Attorney of Muskogee County, State of Oklahoma, and that he represented the State of Oklahoma at an examination of Owen Lewis, minor, in case number 1801, in the County Court of Muskogee County, Oklahoma, which examination was held

before the Hon. John Gulager, Judge of the County Court of Muskogee County. Affiant states that a charge of 'Second Degree Rape' was filed against the said Owen Lewis, but because of the uncertainty of the boy's age, an amended information was filed in the County Court charging him with 'First Degree Rape.' He was arraigned on this charge and plead not guilty through his attorney, Andrew Wilcoxen. The State called several witnesses who testified concerning the alleged commission of the offense charged, that the defendant offered no evidence other than a birth certificate showing him to be fourteen years of age, which reduced the charge to 'Second Degree Rape.' At the conclusion of said trial the court made an order which recited that a crime had been committed, that there was probable cause to believe the defendant guilty and that he, at the time of said offense, knew the difference between right and wrong, and the court certified the case to District Court for trial.

"Affiant states that the question of a jury trial at said examination did not arise and was not discussed at said hearing in his presence for the reason that your affiant and the attorney for the defendant, at least, treated the hearing as a preliminary examination to determine whether a crime had been committed, probable cause to believe the defendant guilty and whether he knew the difference between right and wrong and affiant used the defendant's father as to the latter element. Of course I do not know what sort of hearing the county judge considered he was holding but counsel for defendant moved for a dismissal after the state rested, on the ground that the state had failed to make adequate proof that the defendant knew the difference between right and wrong and the court overruled his motion.

"After the Hon. E. A. Summers, District Judge, certified the case back to the County Court on the grounds that the boy was too young to know the difference between right and wrong, there was a discussion between the counsel for the defendant and the County Judge relative to a jury trial, and the defense counsel stated that he would

demand a jury trial, whereupon the County Judge stated that he had already tried the defendant and had found him guilty. In filing the rape charge in the County Court we were endeavoring to follow the procedure laid down by this court in Wilson v. State, 55 [65] Okla. Cr. 10, [82 .P. 2d 308], which holds that an examination or investigation must be held by the juvenile court and certain findings made by the County Court before the District Court obtains jurisdiction of the defendant. The hearing before the County Judge on November 25th, I considered a preliminary examination and did not consider it a trial on the merits, and I so informed the County Judge at the time the case was certified back to the County Court from the District Court.

"Chal Wheeler, Ass't County Attorney, Muskogee, County, Oklahoma."

To this petition a rule to show cause was issued on March 31, 1947, to which Colonel W. E. Downs, superintendent of the State Training School for White Boys at Helena, Okla., filed his response, in which he alleged in substance that he held Owen Lewis on and by virtue of a commitment made and entered by Honorable John D. Gulager, judge of the county court of Muskogee county, Okla. In support of this response of Colonel Downs, the State of Oklahoma submitted the affidavit of Honorable John D. Gulager, county judge of Muskogee county, Okla., in which the affiant said in substance: ·

"* * * First, that I appointed Mr. Wilcoxen, an attorney, to represent the boy, Mr. Owen Lewis, and he did in a Juvenile trial where the boy was found to be a delinquent child.

"Second, the Court informed both sides a juvenile was entitled to a jury and if either side so wished, they could have a jury and the stenographer. Mr. Wilcoxen just stated in his opening statement to the court he waived a jury and this was done at his request.

"Third, the parents of the boy, Owen Lewis, were in court and the father testified that Owen knew right from wrong and was mindful of his acts. * * *"

The foregoing constitutes the record which presents the issues herein involved. Based upon this record, the petitioner contends:

1. No trial by jury was given your petitioner upon the issue of juvenile delinquency.

2. Your petitioner has not been legally adjudged guilty of rape, nor has he been given a hearing on the issue of juvenile delinquency.

3. Your petitioner is not now and cannot be charged with the offense of rape.

It is apparent from the foregoing state of facts that much confusion exists among trial judges and in the minds of the members of the Bar as to the mechanics of procedure to be pursued in juvenile cases. Neither the trial court nor the lawyers are to be censored for their confusion, but, it apparently was caused by the ambiguity and looseness of some of the language employed in the decisions of this court. The confusion arises by reason of the courts' zeal to effect the humanitarian objectives, namely: That it was passed to work reform and provide moral training for juvenile offenders. In re Powell, 6 Okla. Cr. 495, 120 P. 1022. In its endeavor to give effect to these humanitarian objectives, the Act provides that the court must give a liberal construction to it. Title 10 O. S. A. § 114. In giving a liberal construction to such an Act, courts in their endeavor to preserve the humanitarian aspects of such laws sometimes go beyond the pale of necessity, overreach themselves, and transcend the clear and unambiguous intent of the law, as it appears in unmistak-

able language in the statutes. Then, it is that absurdities appear in the law which give some semblance of fact to the skeptics' conclusion that "the law is a blind fool, dealing in technicalities in her cumbersome efforts to administer justice." Of course, as the law grows older, such as the Juvenile Act now is, a backward look at the work of others more readily reveals the imperfections of their interpretations and applications of the statutes than are the imperfections in our own immediate interpretations and applications revealed to us. However, when imperfections are discovered they should be corrected. The courage to correct such imperfections when they become evident is what makes the law a changing and progressive subject, advancing towards the end of perfection. Perfection in the law cannot be attained through blindness to error or by prejudice built upon precedents. When courts discover limbs of the law that are doty at the heart with bad reasoning, it is the duty of the court to remove them, and make way for the growth of new thought and wholesome fruitage. But courts should be slow to resort to judicial surgery in upsetting precedents, and, should do so only when it will enhance healthful growth of the tree of law. But, they should not seek the line of least resistance and knowingly follow precedents that are palpably bad, for such a course produces stagnation and error upon error. It is none to the credit of the courts to adamently stand on interpretations that are known to be fraught with bad reasoning merely for the purpose of preserving precedents. There is no sacredness in precedents that produce confusion and work injustice either to the individual or the state, even though they are based upon the best of intentions. We should strive to promote health in the administration of the law. This can be attained only by an honest endeavor to eliminate bad precedents, as well as to estab-

lish good precedents. Particularly is this true in the administration of justice in the field of criminal law. We are not so closely bound, in the administration of criminal law, by the harsh rule of stare decisis, so important in the administration of civil law, especially as applied to contracts and property rights. The doctrine of stare decisis is not the sacred tenet in criminal law that it rightfully is in civil law.

Because there is so much confusion surrounding the interpretation of the Juvenile Act, we have become convinced that it is necessary that we re-examine the statutes as to their plain meaning, in so far as they form the basis for prosecution of juvenile delinquents for the commission of crime. We believe that the language of the statutes, prescribing the method of procedure, in juvenile cases, is clear and unambiguous. We believe that if the courts would follow the language thereof and give expression to the intent, and logical inferences, clearly contained therein and not resort to interpretations based upon fiction, much of the confusion would be eliminated. In doing this, we approach the task with no idea of the infallibility of our power over reason or that in this re-interpretation of the statutes we will approach a state of perfection. We have found from experience and observation that perfection in interpretation cannot be reached in one vaulting effort but that it is attained over the rugged road of trial and error. However, that fact should not deter us in an attempt to attain it. Suffice it to say, we hope the expressions in this opinion, on the procedure under the Juvenile Act, will be less confusing than our prior expressions involving these same statutes. It is upon this foundation, and only with the view of eliminating confusion and injustice, that we undertake to clarify the problem which is largely one of mechanics in the administration of the Juvenile

Act. In this opinion, we are only concerned with the interpretation of the Juvenile Act and the procedure outlined therein in so far as the same relates to proceedings against a juvenile in accordance with the laws that may be in force governing the commission of crime. In dealing with this problem, since the procedure is entirely statutory, we shall look largely to the statutes and seek to give them a reasonable interpretation.

An analysis of the Juvenile Act presents a number of salient questions. The first question is: To whom does the Act apply, or, what persons so far as the commission of crime is concerned are within its jurisdiction? Title 10 O. S. A. § 101, as amended, says:

"This Article shall apply to any child under the age of sixteen years not an inmate of a State institution incorporated under the laws of this State."

Further on in this section of the Act, delinquent children, by reason of the violation of law, are defined as follows, to wit:

"* * * any male child under the age of sixteen years and any female child under the age of eighteen years who violates any law of the United States, or of this State, or any city or town ordinance * * * shall be deemed a delinquent child and shall be proceeded against as such in the manner herein provided. * * *"

This court is only concerned with alleged violations of the Criminal Code and the disposition made by the juvenile court of juveniles, delinquent by reason of the commission of crime. All other proceedings in the juvenile court, based on the Act herein under consideration, are civil in nature. The foregoing definition of a juvenile delinquent needs but little amplification. It is quite clear that the act is intended to apply only to male persons who

are under 16 years of age and females under 18 years of age. The Act says it shall apply only to male children under the age of 16 years and females under 18 years of age and we are bound by its plain terms. It is not within our judicial powers to extend its mathematical terms, even under the rule of liberal construction.

The Act, however, did not stop with the definition of who are juvenile delinquents. Its definitions go further and its processes are contingent upon the acquisition of jurisdiction of the person and the determination of certain jurisdictional facts before even its processes can affect a juvenile under 16 years of age.

This brings us to the second question: What are the elements of jurisdiction under the Juvenile Act? Under this Act, as in other cases, the right of the court to proceed to determine the issues therein involved is dependent upon competent jurisdiction. The elements of competent jurisdiction are: (1) Jurisdiction of the subject matter; (2) Jurisdiction of the person; and (3) The point to be decided must be within the court's power as defined by the statutes, and raised by the pleadings. All the foregoing elements must exist by virtue of the definitions contained in the statutes since the procedure is purely statutory, and the juvenile court is one of special and limited jurisdiction. Ex parte Parnell, 19 Okla. Cr. 273, 200 P. 456. All the rights under the Juvenile Act, for the benefit of the juvenile, must be secured to him in the manner therein provided.

This brings us to the third question: How does the court acquire jurisdiction? The manner in which the court can acquire jurisdiction of a juvenile delinquent, as found under the provisions of the Juvenile Act, is contained in

Title 10 O. S. A. § 105, wherein the statute provides as follows:

"Any reputable person being a resident of the county having knowledge of a child in his county who appears to be either neglected, dependent or delinquent, may file with the clerk of court having jurisdiction in the matter, a petition in writing, setting forth facts verified by affidavits. The petition shall set forth the name and residence of the legal guardian, if known, or if not known then the name and residence of near relative, if there be one and his residence known. It shall be sufficient that the affidavit is upon information and belief. R. L. 1910, § 4416."

These provisions are based upon knowledge of a child appearing to be delinquent, either by reason of the commission of some crime or by reason of any of the other grounds found in Title 10 O. S. A. § 101. Under the provisions of the foregoing statute, such reputable person may be an individual citizen or a public official such as the county attorney. However, the fact of the commission of a crime, by a juvenile, may be discovered by the juvenile court, incident to a proceeding involving a neglected or dependent child, which fact, being so discovered by the juvenile court, should then be called to the attention of the county attorney for the filing of a petition in juvenile delinquency with the juvenile court. It is pertinent to add that all proceedings against a juvenile delinquent should be commenced by the filing of a petition alleging juvenile delinquency. That is the fundamental act in such cases, even though they ultimately involve a prosecution for the commission of crime. Upon the belief that a child is a juvenile delinquent and the filing of a petition in the juvenile court, by a reputable person not the county attorney, charging juvenile delinquency by reason of the commission of crime, the county attorney, as the chief

prosecuting officer of the county, should be immediately notified and placed in charge of the prosecution of said petition, whose duties in relation thereto we will discuss hereinafter.

When a petition has been filed for juvenile delinquency with the juvenile court, both summons and notice must be served and returned as provided in Title 10, O. S. A. § 106, which reads as follows:

"Upon the filing of the petition, a summons shall be issued requiring the person, having custody or control of the child, or with whom the child may be, to appear with the child at a place and time stated therein, which time and place shall not be less than twenty-four hours after service. The parents of the child, if living and their residence, is known to the petitioner, or its legal guardian, if there be one, and his residence is known to the petitioner or, if there is neither parent nor guardian, or if his or her residence be not known, then some near relative, if his residence be known to the petitioner, shall be notified of the proceedings, and in any case the judge may appoint some suitable person to act in behalf of the child, summons and notice may be served by the sheriff or by any duly appointed probation officer, either by reading the same to the person to be served or by leaving a copy thereof at his usual place of abode, or with some person of his family of the age of ten years or upwards, and informing such person of the contents thereof. The return of such summons and notice with endorsement of service by the sheriff or probation officer in accordance herewith shall be sufficient proof thereof. R. L. 1910, § 4417."

A petition having been filed, charging juvenile delinquency, summons having been served upon the person having custody of said child, notice having been given to the parents or guardian, or relatives, as the case may be, the child being represented by some suitable person acting in his behalf, in the case, and the child being before

the court, the court should proceed without delay with the hearing on the charge of juvenile delinquency. The requirement as to service of summons and notice may be waived by the person having custody of the child by voluntary appearance. Argabright v. Christison, 142 Okla. 243, 286 P. 347; Killian v. Burnham, 191 Okla. 248, 130 P. 2d 538.

This brings us to the fourth question: What are the questions to be determined at the hearing in the juvenile court, on a petition charging juvenile delinquency by reason of the commission of crime, and, what disposition can be made of such child, if found delinquent by reason of the commission of crime? Title 10 O. S. A. § 112 provides:

*"Every child who shall have been adjudged delinquent, whether allowed to remain at home, or placed in a home, or committed to an institution, shall continue to be a ward of the court until such child shall have been discharged as such ward by order of court, or shall have reached the age of twenty one years, and such court may during the period of wardship cause such child to be returned to the court for further or other proceedings, including parole, or release from an institution: Provided, However, that notice of all applications to the court for such parole or release shall be given to the superintendent of such institution at least ten days before the time set for the hearing thereof, or the consent, in writing of such superintendent to such parole or release shall be filed. The court may, however, in its discretion, cause such child to be proceeded against in accordance with the laws that may be in force governing the commission of crime."*

An analysis of this section of the foregoing statute, in relation to the hearing on the petition charging juvenile delinquency, in the juvenile court, turns upon the language, "every child who shall have been adjudged delinquent," which clearly implies an adjudication of the fact of delinquency. Such an adjudication is fundamental-

ly essential as a predicate for disposition of such a child. This adjudication is part and parcel of the hearing on the petition alleging juvenile delinquency. It is not a separate proceeding or what has been referred to as "a preliminary investigation," "a preliminary hearing by the juvenile court on the complaint," "an investigation," and similar terms as used in the following cases: Marks v. State, 69 Okla. Cr. 330, 102 P. 2d 955; Wilson v. State, 65 Okla. Cr. 10, 82 P. 2d 308; Ex parte Bonitz, 30 Okla. Cr. 45, 234 P. 780; Ex parte Raymer, 38 Okla. Cr. 31, 258 P. 1063. The trial courts could very easily have been confused by such statements. It is neither a part of the preliminary hearing on the criminal complaint, nor an investigation. It is a hearing on the petition alleging juvenile delinquency up to the point of and including the exercise of the court's discretion, after a finding that the child is delinquent. That is to say, it is a full hearing on the petition alleging juvenile delinquency to the point where an adjudication of juvenile delinquency has been had, by reason of the violation of some criminal statute; at which stage the court in the exercise of its discretion determines whether to retain jurisdiction and dispose of the child by parole or otherwise as provided in Title 10 O. S. A. § 111, or cause said child to be prosecuted in a court of competent jurisdiction for the commission of crime. Title 10 O. S. A. § 112. This hearing is conducted to enable the court to determine, on a charge of delinquency of a male, by reason of the commission of crime, the following facts:

1. That the accused is a juvenile under 16 years of age;

2. That he is a delinquent from what appears to be the commission of crime; and,

3. That the juvenile is or is not possessed of such competency as to enable him to appreciate the wrongfulness of his acts.

Ex parte Raymer, supra; Ex parte Alton, 38 Okla. Cr. 383, 262 P. 215; Ex parte Humphries, 31 Okla. Cr. 172, 237 P. 624; Ex parte Bonitz, supra; Ex parte Pyzer, 29 Okla. Cr. 156, 232 P. 962; Ex parte Hightower, 13 Okla. Cr. 472, 165 P. 624. All the Oklahoma decisions hold that the finding of mental capacity by the juvenile court is a necessary prerequisite to a valid conviction of a male child under 16 years of age, charged with the commission of crime, in a court of competent jurisdiction. Upon the determination of these facts in the affirmative, we repeat for emphasis, that, the juvenile court as provided by Title 10 O. S. A. § 112, in the exercise of its discretion, may determine whether to order the juvenile proceeded against as an accused criminal in a court of competent jurisdiction, or, to retain jurisdiction of the juvenile in the juvenile court for proper disposition under the provisions of the Juvenile Act, Title 10 O. S. A. § 111.

If the court finds that the child is a juvenile delinquent by reason of the commission of crime but that it should not be prosecuted therefor, in a court of competent jurisdiction, because he did not appreciate the wrongfulness of his acts, then the court may proceed to dispose of said juvenile as provided under the provisions of Title 10 O. S. A. § 111, which reads as follows:

"In the case of a delinquent child, the court may continue the hearing from time to time and commit the child to the care or custody of a probation officer, or any other person, or may allow said child, to remain in its home, subject to the visitation of the probation officer, such child to report to the probation officer as often as may be

required; or the court may cause the child to be placed in a suitable family home, subject to the friendly supervision of a probation officer, and to the further order of the court; or it may authorize the child to be boarded out in some suitable family home in case provision is made by voluntary contribution or otherwise for the payment of the board of such child until a suitable provision may be made for the child in a home without such payment; or the court may commit the child, if a boy, to a training school for boys, or, if a girl, to an industrial school for girls; or the court may commit the child to any institution in the county incorporated under the laws of this State that may care for delinquent children or that may be provided by a city or county, suitable for the care of such children or to any State institution which may be established for the care of delinquent children; or the court may commit the child to the care and custody of some association that will receive it, embracing in its objects the care of neglected or dependent children, and that has been duly accredited as hereinafter provided. *In no case shall a child beyond the age of sixteen years be committed to an institution.* A child committed to such an institution shall be subject to the control of the superintendent thereof, and the said superintendent shall have power to parole such children under such conditions as he may prescribe."

It is well that here we observe that this court refused to extend the italicized provision in relation to commitment of a juvenile over 16 years of age to a state institution—beyond the mathematical limits of the statute; in Ex parte Wilkins, 78 Okla. Cr. 135, 145 P. 2d 438.

In the hearing on the petition for juvenile delinquency, the juvenile shall be entitled to a jury trial, under the provisions of Title 10 O. S. A. § 102, reading in part as follows, to wit:

"* * * In trials, under this Article, the child informed against, or any person interested in such child, shall have

the right to demand a trial by jury, which shall be granted as in other cases unless waived, or the judge of his own motion may call a jury to try any such case."

The provisions of section 102 are clear and unambiguous. Its provisions are mandatory upon the juvenile court when demand has been properly and timely made. The failure to accord a jury trial, where demanded, to a juvenile charged as a delinquent, being tried on a petition for juvenile delinquency by reason of the commission of crime, constitutes reversible error. However, under the statute, the right to a jury may be waived unless demand is made therefor, and such is the holding of the court in the case of Ex parte Hollowell, 84 Okla. Cr. 355, 182 P. 2d 771. The failure of the juvenile court to accord a jury trial, where demand therefor is made, is not to be excused on the grounds that a jury is not available. It is the mandatory duty of the court to provide a jury without delay. The failure to procure and provide a jury trial in such cases constitutes a neglect to follow the plain pronouncements of the statute, unless, of course, under proper circumstances, a jury has been waived either by express statement or failure to make demand therefor.

If, instead of retaining jurisdiction, the juvenile court determines that the juvenile is a delinquent by reason of the commission of crime and should be prosecuted in the court having competent jurisdiction of the crime, the juvenile judge should make a proper order detailing his findings and directing that prosecution be commenced by the county attorney against the juvenile. The reason the juvenile court should detail its findings is because it is exercising special or limited power, derived from statutes and, in such a case, jurisdictional facts are not pre-

sumed. Such has been the holding of this court in the case of Ex parte Parnell, supra:

";Jurisdictional facts should appear in the record, and will not be presumed by this court in a proceeding in habeas corpus."

Ex parte Dickerson, 67 Okla. Cr. 439, 94 P. 2d 951, 952, wherein this court said:

"Where a court of record and of general jurisdiction exercises special or limited powers derived from statutes, and not in the exercise of general jurisdiction according to the common law, as provided in our juvenile statutes, the jurisdictional facts should appear in the record, and will not be presumed by this court in a proceeding in habeas corpus, attacking the jurisdiction of the court. A want of jurisdiction, under such circumstances, may be shown by evidence outside the record."

The order thus made should be called to the attention of the county attorney, who may institute criminal prosecution against said juvenile or who, after a thorough investigation of the facts, may, in the exercise of his discretion, decline to prosecute said juvenile. This holding is in keeping with the provisions of Title 22 O. S. A. § 258, subsection 3, which reads in part as follows, to wit:

"No preliminary information shall be filed without the consent or endorsement of the county attorney, unless the defendant be taken in the commission of a felony, or the offense be of such character that the accused is liable to escape before the county attorney can be consulted. * * *"

This interpretation, relative to the juvenile court's order directing the matter to be called to the attention of the county attorney for prosecution, is contrary to the prior holdings of this court, hereinafter cited, to the effect that upon determination by the juvenile court that he should be prosecuted for the commission of crime, that

fact should be certified to a court of competent jurisdiction. Marks v. State, supra; Wilson v. State, supra; Ex parte Raymer, supra; Ex parte Bonitz, supra; Ex parte Brown, 29 Okla. Cr. 369, 233 P. 1098. The holding that the county attorney may or may not institute prosecution is based upon the foregoing statute providing that prosecutions shall not be filed without the consent or indorsement of the county attorney, etc. All prosecutions for violations of the law are commenced either by the filing of a preliminary complaint before a committing magistrate or by the presentment of an indictment by a grand jury. The juvenile court is without power to institute prosecutions. This power, under the foregoing statute, has been vested in the county attorney or a grand jury. Under the Juvenile Act, after the juvenile has been adjudged the delinquent under the statute and the juvenile court has ordered him prosecuted for the commission of crime, if a prosecution is commenced, it should be carried on by the county attorney who alone, except a grand jury, is the representative of the State, authorized to institute prosecutions. Nowhere in the statutes is there any basis whatsoever for the statement in former decisions of this court that the county court should certify the juvenile to the district court for trial, in a juvenile proceeding. The power, as in all cases, has been vested in the county attorney as the chief law officer to investigate alleged violations of law and to institute prosecutions. Title 22 O. S. A. § 258, subsection 3, supra, makes no exceptions in favor of the juvenile court. In this connection, it is interesting to note that this court, in the case of State v. Snelson et al., 13 Okla. Cr. 88, 162 P. 444, 445, had under consideration a similar statute, Title 74 O. S. A. § 179, authorizing the Commissioner of Charities and Corrections to make full investigations of certain cases and vesting the power to institute prosecutions in the Commissioner of Charities and Corrections in the following language:

"In event of a refusal to obey such order, it shall be the duty of the Commissioner of Charities and Corrections

to prosecute such officers * * * in some court of competent jurisdiction."

This language is even stronger than the language employed in the Juvenile Act, Title 10 O. S. A. § 112, as follows:

"The court may, however, in its discretion, cause such child to be proceeded against in accordance with the laws that may be in force governing the commission of crime."

In the Snelson case, Judge Rutherford Brett, a former member of this court and the father of the writer of this opinion, said:

"The sole question presented by the appeal is whether or not section 8099, Rev. Laws 1910 [74 O. S. 1941 § 179], gives the commissioner of charities and corrections the authority to institute a criminal action and prosecute the same, without the indorsement and approval of the county attorney, by himself indorsing the information as commissioner of charities and corrections.

"Section 5694, Rev. Laws 1910 [22 O. S. 1941 § 303], provides that:

" 'The county attorney shall subscribe his name to informations filed in the county, superior or district court and indorse thereon the names of the witnesses-known to him at the time of filing the same.'

"And it has been consistently held by this court that, under this statute, 'it is essential to the validity of an information charging a misdemeanor that it be signed by the county attorney, as his signature is expressly required by the statute.' McGarrah v. State, 10 Okla. Cr. 21, 133 P. 260; Reed v. State, 2 Okla. Cr. 589, 103 P. 1042. This is not an arbitrary rule, but the statute is based upon experience and reason. Every criminal offense committed is an offense against the peace and dignity of the state, and it is the duty of the county attorney to guard the interests of the state, and the public, and as a quasi judicial officer to determine, before an action is filed, whether

or not the matters complained of constitute an offense against the state. Hence the authority to commence criminal actions on behalf of the state has by the Legislature, been intrusted to the county attorneys of the different counties of the state, and certain other officials, as stated in Viers v. State, 10 Okla. Cr. 28, 134 P. 80, and Ex parte Kelly, 45 Okla. 577, 146 P. 444. And it is, we think, undoubtedly within the power of the Legislature to also grant this authority to the Commissioner of Charities and Corrections if it should see fit to do so. But we think it has not done this by the terms of section 8099 Rev. Laws 1910; but that all this section does is to impose upon the commissioner of charities and corrections the duty to prosecute the class of offenders specified through the regular channels existing for the prosecution of offenders.

"A 'prosecutor' is defined as:

" '* * * One who instigates a prosecution, by making an affidavit charging a named person with the commission of a penal offense, on which a warrant is issued or an indictment or accusation is based.' Words and Phrases, Second Series, vol. 3, p. 1311; 6 Words and Phrases, p. 5739; Eady v. State, 10 Ga. App. 818, 74 S. E. 303.

"And section 8099, Rev. Laws 1910, we think, does not even attempt to confer additional authority upon the commissioner of charities and corrections, but only imposes a duty upon him, which is to be performed through the regular and existing channels for the prosecution of offenders."

It is apparent that the foregoing statutes under which the Commissioner of Charities and Corrections sought to institute prosecutions is much stronger in its terms than that employed in section 112 of the Juvenile Act, supra. In this connection, it is important to note that the quoted portion of § 112 provides: "* * * cause such child to be proceeded against in accordance with the laws that may be in force governing the commission of crime." We cannot ignore the fact that the provisions of Title 22 O. S.

A. § 258 subsection 3, supra, constitutes a portion of the law setting forth the procedure provided for prosecutions "in accordance with the laws" that are in force "governing the commission of crime." Calling the matter of the prosecution of a juvenile to the attention of the county attorney is one of the regular and existing channels established by law for the prosecution of offenders. In a juvenile case, however, we are aware the petition alleging juvenile delinquency may be filed by some interested person, not the county attorney, and without the knowledge or approval of the county attorney. In such a case, it would be wholly unfair to the county attorney to say that the juvenile court could certify the juvenile to the district court for trial without giving the chief law officer of the county the right to investigate the case and file a criminal complaint before a committing magistrate or of having the matter submitted to a grand jury in accordance with our Constitution and statutes concerning the commencement of prosecutions for violations of law. To hold that such could be done would be to negative the pronouncements and provisions of Title 22 O. S. A. § 258. It would further amount to holding that the provisions of Title 22 O. S. A. § 258 have been repealed by implication under the provisions of the Juvenile Act. Such a holding would be clearly unwarranted in our opinion. In any case involving the construction of various sections of the statutes it is the duty of the court to construe the sections of the statutes in harmony, where possible so to do. We do not believe this construction is an unreasonable one, particularly in view of the clear and unambiguous intent of the Legislature, to make the county attorney the chief law officer vested with the power to institute prosecutions. A recent case in harmony with the foregoing conclusions

is that of Perry v. State, 84 Okla. Cr. 211, 181 P. 2d 280, 281, which holds:

"The statutes of Oklahoma make it the duty of the County Attorneys to guard the interests of the state and public and specifically confer authority upon them to determine when to commence criminal actions on behalf of the state."

That opinion cites, with approval, the foregoing case of State v. Snelson, supra, as well as quoting the quotation hereinbefore relied upon. In addition thereto, it quotes from McGarrah v. State, 10 Okla. Cr. 21, 133 P. 260, 262, as follows to wit:

"We know of no rule of law whereby a public officer may delegate power or authority involving official discretion or responsibility, except as prescribed by the statute. The law has very carefully guarded the administration of public justice from any interested or unauthorized intermeddling. The county attorney is a very responsible officer, selected by the people and vested with a wide personal discretion, intrusted to him as a minister of justice. There are many reasons why a power of this kind should be confined to the prosecuting officer. He is expected to be impartial in abstaining from prosecuting, as well as in prosecuting, and to guard the real interests of public justice in favor of all concerned.

"It is therefore of the highest importance to the public that this power should be carefully exercised, and that the responsibility should rest upon the officer to whom it is confided.

"* * * The office of county attorney is quasi judicial, and the county attorney and his legally appointed assistant must be exclusively the representative of public justice, and stand indifferent as between the defendant and any private interest. * * *

"The public have a right to insist upon the performance of public duties that are strictly official in the pros-

ecution of crime by county attorneys and assistants duly appointed and qualified as provided by law, and we think it would be directly contrary to public policy to allow or permit any general delegation of the county attorney's power or responsibility in this respect."

See, also, in this connection, Grimes v. State, 65 Okla. Cr. 99, 83 P. 2d 410; Radford v. State, 23 Okla. Cr. 407, 215 P. 218; Johns v. State, 15 Okla. Cr. 630, 179 P. 941. Though the matter of ultimately determining whether prosecution should be instituted against the juvenile is a matter for determination by the county attorney, the order of the juvenile court should carry great weight with him in determining whether prosecution should be instituted against the alleged offender, but, such order is directive only and not mandatory. However, when the order of the juvenile court directing the juvenile offender to be prosecuted is called to the attention of the county attorney, he has a greater burden and responsibilty then than that in an ordinary case where complaint has been made to him that some adult has committed acts that constitute a violation of some provision of our criminal code. The county attorney, in determining the question of whether or not prosecution should be instituted against the juvenile offender, should treat the opinion of the juvenile judge with the greatest respect but at the same time he should not be unmindful of the fact that he stands as the last bulwark between the juvenile offender and a criminal prosecution which, regardless of the outcome, always leaves a stigma of stain. Thus, an additional safeguard is thrown about the juvenile in that he has not only the benefit of the hearing on the petition alleging juvenile delinquency but has the benefit of the investigative powers of the county attorney's office and the benefit of the discretion of the county attorney relative to whether he

should be prosecuted as for the commission of crime. In the event the county attorney should determine that the alleged juvenile offender should not be prosecuted as for the commission of crime, he should cause said juvenile to be disposed of in the juvenile court as in the Juvenile Act provided.

In the event the county attorney determines, in the exercise of his discretion, that the juvenile delinquent should be prosecuted, it then becomes his duty to institute prosecution against the juvenile by complaint. The complaint, charging the juvenile with the commission of crime, should then be filed before a committing magistrate, warrant issued, arrest made, and the juvenile brought before said committing magistrate, not necessarily the county judge, but before any committing magistrate. While it may be preferable to take the juvenile before the county judge as committing magistrate for the preliminary hearing because of his familiarity with the case, there is no provision of law requiring that said preliminary be conducted by a county judge. It may be conducted by any committing magistrate. Henceforth, the juvenile delinquent stands on the same footing as an adult charged with crime. This holding is not in accord with decisions of this court heretofore rendered to the effect that the juvenile court is the only court having jurisdiction to conduct a preliminary examination involving juvenile offenders. Ex parte Parnell, 19 Okla. Cr. 273, 200 P. 456; State v. Alexander, 18 Okla. Cr. 546, 196 P. 969; Ex parte Powell, 6 Okla. Cr. 495, 120 P. 1022; Ex parte Dickerson, 67 Okla. Cr. 439, 94 P. 2d 951. The holdings in these cases are thus expressly modified. Where the preliminary is conducted by the county court, it should be distinctly understood that the county judge in sitting as a committing magistrate

does not sit as a juvenile judge, and, in sitting as juvenile judge, he does not sit as a committing magistrate. The two capacities—the proceedings in the juvenile court as a committing magistrate, and juvenile judge, are separate and distinct and they must be so regarded. They are not to be conducted as one and at the same time. Nor are the matters of the two to be kept in the same docket; they too are separate and distinct, Title 10 O. S. A. § 103.

If the committing magistrate be the county judge, as it was in the case at bar, the preliminary hearing is conducted as in the case of any other criminal complaint where the county court sits as a committing magistrate. In the preliminary hearing the committing magistrate determines whether, under the criminal complaint, a crime has been committed and whether there is probable cause to believe that the accused committed the crime. Title 22 O. S. A. §§ 263, 264; Ex parte Orton, 75 Okla. Cr. 97, 128 P. 2d 1025; Lyon v. State, 55 Okla. Cr. 226, 28 P. 2d 598; Neff v. State, 39 Okla. Cr. 133, 264 P. 649, and numerous other cases. The answer being in the affirmative, the accused should then be bound over to the court having competent jurisdiction with or without bail, as the case may merit, Title 22 O. S. A. § 265, 266, 267, to be charged by information, or, by indictment by a grand jury. In the preliminary hearing on the criminal complaint before the county court, sitting as committing magistrate, the juvenile is not entitled to a jury.

When the juvenile judge directs the filing of criminal charges against a juvenile delinquent for commission of crime, it thereafter has only a passive interest in said cause. However, it should not dismiss the petition for juvenile delinquency but should hold the same in a state

of suspense pending the outcome of the criminal charge in the court of competent jurisdiction.

Upon the filing of an information by the county attorney, in the court of competent jurisdiction, it is the duty of said court (in this instance the district court) to try the cause on the charges thus laid. In that court it is not within the power of the court thus acquiring jurisdiction to arbitrarily assume that the county court, sitting as a juvenile court, was incapable of determining the mental capacity of the juvenile and his delinquency. In this connection, the court thus acquiring jurisdiction does not sit in any appellate capacity exercising powers of reversal. A contrary adjudication can only be had in a court of competent jurisdiction in the trial upon the merits of the case. This is obvious since the question of juvenility and the matter of mental capacity in a trial for the commission of crime, as to a juvenile, is a defense which may be raised in the trial upon its merits. In the trial upon the merits this would be a question of fact to be determined by the jury, assuming, of course, that the state makes a prima facie case as to the commission of crime and establishes as well the identity of the accused as the person who committed it. Under such circumstances, two things can happen. First, either the accused may be found guilty by reason of the fact of the crime and the establishment of his identity as the person who committed the same; and, the establishment of his mental capacity to know the wrongfulness of his acts; or, second, he may be acquitted by reason of failure of the state to make a prima facie case or by reason of failure of proof of some essential element of the alleged crime, in which case, the matter may then be returned to the juvenile court for further proceedings under the continuing jurisdiction of the juvenile court as hereinbefore indicated.

This brings us to the last question involving jurisdiction. Is the jurisdiction of the juvenile court exclusive and prerequisite to a trial on the merits of one who committed an offense under 16 years of age, but whose crime was not discovered and who was not apprehended until he had passed 16 years of age? This court has held that the jurisdiction is exclusive and a prerequisite for the trial of a juvenile as for the commission of a crime in a court of competent jurisdiction. This court has held that the jurisdiction is determined by the age of the child at the time the crime was committed. Ex parte Bonitz, supra; Ex parte Raymer, supra; Ex parte Alton, 38 Okla. Cr. 383, 262 P. 215; Wilson v. State, 65 Okla. Cr. 10, 82 P. 2d 308-315; Ex parte Dickerson, supra; Marks v. State, supra. With these cases we are only partially in accord. In so far as they, or any other Oklahoma Criminal decisions, do not accord herewith, they are herein expressly modified. Where the age of the accused is definitely determined to be under 16 years, in the case of a male, and there has been an adjudication of juvenile delinquency by reason of the commission of crime and the determination of competency to know the wrongfulness of his acts, the juvenile court under the language of the statute has sole jurisdiction to make disposition of the juvenile delinquent, either by commitment, by probation, etc., as provided in the statutes, or by causing said juvenile to be prosecuted in a court of competent jurisdiction. But, we believe where the male child reaches 16 years of age, and a female child reaches 18 years of age, before determination of these jurisdictional facts necessary for disposition under the Juvenile Act, the juvenile court is without jurisdiction. Its jurisdiction is narrowed by the mathematical limits of the statute. Beyond that, it cannot go. This holding is

in keeping with majority opinion, and persuasive cases though not strictly in point, holding that:

"The time of the trial rather than that of the alleged commission of the offense or act of delinquency, controls in determining whether the juvenile court has exclusive jurisdiction."

See 123 A. L. R. 446; Stallings v. State, 129 Tex. Cr. R. 300, 87 S. W. 2d 255, wherein that court said:

"This court has laid down the rule that the age of the accused at the time of the trial must determine the question as to whether he be tried as a juvenile delinquent, or as one guilty of the felony charged against him."

See, also, Stracner v. State, 86 Tex. Cr. R. 89, 215 S. W. 305. The holding in these cases is based on the time of trial, while our holding is based upon adjudication before reaching 16 years of age in the case of males and 18 years of age in the case of females. The principle and effect is the same. When the court, in its construction, exercises its interpretation beyond the limitations of the statutes, such situations arise as in the case of Wilson v. State, supra, to which County Attorney Chal Wheeler made specific reference in his affidavit, in the case at bar. Therein, Clifford Wilson was convicted of a murder which was committed when he was allegedly under 16 years of age, but which crime was not discovered and for which he was not apprehended until he was past 22 years of age. In that case, this court found him to be a juvenile at the time of the commission of the crime and said that the jurisdiction of the juvenile court attached because at the time of the commission of the crime he was a juvenile under 16 years of age. This court reversed the conviction and remanded the case for proceedings in the juvenile court and particularly to determine the question of competency to know the

wrongfulness of his act at the time the crime was committed. This holding, we believe to be clearly contrary to the statute and the legislative intent as contained therein. Title 10 O. S. A. § 112 provides in part that juvenile courts shall have continuing jurisdiction of juvenile offenders, "allowed to remain at home, or placed in a home, or committed to an institution" and says that under said jurisdiction, that the juvenile "shall continue to be a ward of the court until such child shall have been discharged as such ward by order of the court, or shall have reached the age of twenty-one years," if males, and if females until they shall have reached the age of 18 years. Ex parte Sweeden, 84 Okla. Cr. 127, 179 P. 2d 695. It is apparent that where the court acquires jurisdiction of a juvenile and its jurisdiction is continuing, that even the continuing jurisdiction ceases, in the case of boys, when they reach the age of 21 years and in the case of girls, when they reach the age of 18 years, under the language of the statute. This being true, then under what fiction could the court be said to acquire jurisdiction of cases where its jurisdiction had never attached until after the accused became over 21 years of age and before his crime was discovered and he was apprehended? Surely no one will contend that under the last referred to provisions of the statute the juvenile court would have power to continue jurisdiction over children charged with delinquency under the provisions of the statute for any of the other grounds such as incorrigibility, etc., and not by reason of the commission of crime where such persons, being boys, were over 21 years of age, or being girls, were over 18 years of age. An attempt to so construe the statute as to boys and girls over 21 and 18 years of age, respectively, where the charge was not by reason of commission of a crime, would be a clear abuse of power. If, then, it is an abuse of power to

extend the court's continuing jurisdiction beyond the mathematical limits of 21 and 18 years, how then can we justify an extension of the mathematical limits as to the age of a male beyond 16 years or a female beyond 18 years, in cases involving the commission of crime where the crime is not discovered and the accused is not apprehended or where there has been no determination of the necessary jurisdictional facts under the statute before the juvenile reaches the age of 16 years and 18 years, respectively, which as we have hereinbefore said, under the statute, is a necessary prerequisite for the court to make disposition either within its powers as a juvenile court by committing him to a home, etc., or to cause the child to be prosecuted as for the commission of crime in a court of competent jurisdiction. Upon what grounds can we justify violence to the statute in one instance and deny it in the other? If the juvenile court can acquire jurisdiction of a person who committed an offense as a juvenile but who is not charged with the commission of a crime until he attains the age of 22, why not 52 or 102? Such situations arise from the holding that the age at the time the offense was committed determines whether he is to be charged in the juvenile court with being a juvenile delinquent. As was said in Scopillitti v. State, 41 Ohio App. 221, 180 N. E. 740, 742, 123 A. L. R. 447:

"If a young man seventeen years of age commits a murder, and is not apprehended either on a warrant or an indictment until let us say he is twenty-five years of age, it would be silly to say that his case must be referred to the juvenile judge because the offense was committed when he was a juvenile."

There might be some excuse for holding that the rule in the Wilson case, supra, was sound if the determination by the juvenile court as to the competency of the ac-

cused at the time the crime was committed was final and binding on the court of competent jurisdiction in the trial upon the merits, but such finding is not binding. As we have heretofore said, the matter of mental competency is an affirmative defense that can be raised at the trial on the merits to be determined by the jury. We believe the Legislature intended the adjudication of juvenile delinquency and determination of mental capacity as directive only to the county attorney, as to the question of the forum. If it had been the intention of the Legislature to make the jurisdiction exclusive and a prerequisite to subsequent proceedings in a court of competent jurisdiction, it could very easily have said so, but it did not. Likewise, it could have just as easily provided that the age of the juvenile at the time of the commission of the offense was the determining factor in fixing jurisdiction, but it did not. Moreover, it could have provided that proceedings in the juvenile court, regardless of age at the time the accused was apprehended, were prerequisite to disposition in a court of competent jurisdiction in a trial upon the merits. But, it did not. It went only so far as to say that the "County Courts of the * * * State shall have jurisdiction in all cases coming within the terms and provisions of this Article." 10 O. S. A. § 102. In that connection, the Act fixed the jurisdictional limits for disposition of juveniles in the juvenile courts at the mathematical figure of 16 years as to males and 18 years as to females. Moreover, it said that jurisdiction to make disposition of a child in the juvenile court is contingent upon adjudication, as hereinbefore discussed, before the male juvenile reaches the age of 16 years or the female the age of 18 years. This court, as it is now constituted, believes that in every case jurisdiction should be made to turn upon facts and legislative definitions and not upon fiction.

Moreover, to follow the prior holdings of the court, in relation to the question of jurisdiction, would compel us to construe the provisions of section 101 to the exclusion of all other provisions of the Act and particularly to the exclusion of section 112, the import of which we have hereinbefore discussed. To do so is contrary to the fundamental rule of construction, that an act of the Legislature must be construed in such manner as to harmonize and give meaning to each and every provision thereof where it is possible so to do. In expounding one part of a statute, resort should be had to every other part. 59 C. J. 1003, note 78. See In re Durant National Bank, 107 Okla. 65, 230 P. 712; Ex parte Tyler, 2 Okla. Cr. 455, 102 P. 716.

Harmonizing these sections, certain conclusions are obvious: (1) That a male over 16 years of age who commits a crime does not come within the provisions of the Act. (2) Neither does a male over 16 years of age who committed a crime before he reached the age of 16 years where there has been no adjudication before he reached the age of 16 years that he was a juvenile delinquent. (3) That the court acquires jurisdiction of the subject matter only by provisions of the statute, Title 10 O. S. A. § 101, as amended; by the filing of the petition, Title 10 O. S. A. § 105; pleading the necessary facts such as the age of the juvenile and his delinquency, either by reason of the commission of crime or by reason of any of the other grounds set out in the provisions of the statute. This is made necessary because of the fact that the juvenile court, in juvenile cases, exercises special and limited jurisdiction and facts necessary to confer jurisdiction must be pleaded. Sufficient facts must be alleged to confer jurisdiction, 43 C. J. S., Infants, § 99, subsection (d), note 86, and said facts must be verified. Title 10 O. S. A. § 105. (4) Juris-

diction of the subject matter, standing alone, and as conferred by the pleadings, is not sufficient to move the court in the exercise of its powers conferred by the statute. There must be jurisdiction of the person. Jurisdiction of the person can only be obtained through the medium of process, as provided in Title 10 O. S. A. § 106, to bring the juvenile before the court in personal appearance. It is obvious, if this is not done before the male child reaches the age of 16 years, the jurisdiction of the person is lost by lapse of time or by operation of law. It being necessary to meet these provisions of law before the male child reaches the age of 16 years, unless they are met the juvenile court is without jurisdiction to attempt to make a disposition of said child. (5) The child being legally before the court by proper pleadings, the issuance of proper process and in person, before it can make disposition of said child as provided in Title 10 O. S. A. § 111, or by directing that he be prosecuted as for the commission of crime as provided in Title 10 O. S. A. § 112, there must be an adjudication that said child is a juvenile delinquent.

Therefore, it is our opinion that jurisdiction of the juvenile court is specifically and expressly limited in its effect by terms of the statute, supra. The language of the statute is so plain, we are convinced that jurisdiction under the Act has reference to the age of the accused when he is brought before the court and adjudged to be a juvenile delinquent and its jurisdiction is not determined exclusively by the time of the commission of the alleged crime. This being true, jurisdiction of the juvenile court with reference to the age at the time of the commission of the offense, is not exclusive and does not constitute a prerequisite for disposition of juveniles whose crimes may not have been discovered before they reach the age of 16. But, that does not mean that wrongs committed against

society by males under 16 years of age or by females under 18 years of age who possess the mental capacity to know the wrongfulness of their acts and where the juvenile court did not acquire jurisdiction before they reached the age of 16 and 18 years, respectively, should go unpunished merely because their crimes were not discovered until after they reached their 16th or 18th birthdays respectively. The prosecution of such is the same as against an adult. As was said in the earliest opinion construing the Juvenile Act, In re Powell, 6 Okla. Cr. 495, 120 P. 1022: "[The juvenile act] takes away no jurisdiction heretofore conferred upon any of the courts to try offenses against the penal laws of the state." It simply places additional duties on the county courts and greater responsibility on the county attorneys, and provides a method of bringing children before the juvenile courts to be dealt with provided jurisdiction of said children is acquired before they reach the age of 16 years in the case of males and 18 years in the case of females, in the manner and form as hereinbefore set forth and as provided by law.

The record herein discloses that a petition for juvenile delinquency was filed, and summons and notice issued, served, and returned as by law provided.

The record further discloses that the county court, sitting as a juvenile judge, heard the petition alleging juvenile delinquency and made the necessary findings in the judgment thereon. This conclusion is established by reference to the court's order, reading in part as follows, to wit:

"Now, on this, the 25th day of November, 1946, the same being a regular court day, this cause coming on to be heard before me John Gulager, Judge of the above named court, and the petitioner herein appearing by Chal

Wheeler, Asst. County Attorney of Muskogee County, and the minor defendant being present in open court in person and by Andy Wilcoxen and William Hillhouse, his attorneys of record, and summons and notice having been served and returned as provided by law, and all parties announce ready for trial. Whereupon the court having heard the testimony of witnesses sworn and examined in open court and being fully advised in the premises, finds that Owen Lewis is a minor of the age of fourteen years at the time of the commission of the offense charged and that he is a juvenile delinquent within the meaning of the statutes of this state."

Up to that point it appears that the court was acting upon the petition alleging juvenile delinquency and made the necessary jurisdictional findings. The court apparently knew what he was doing at this stage of the proceedings, notwithstanding the affidavits of the county attorney and assistant county attorney to the contrary, namely, that they treated the hearing as one on the preliminary complaint. Such must be our holding under the decisions of this court. Where the judgment appears to have been properly entered, it cannot be impeached or contradicted in habeas corpus. Ex parte Adams, 42 Okla. Cr. 27, 274 P. 485.

The record is clear in this proceeding that no demand for a jury was made, which as was said in the Hollowell case, supra, is a condition precedent to trial by jury. As hereinbefore indicated, under the conditions herein involved, the same is therefore waived. Up to the point of and including the adjudication of juvenile delinquency, the county court, as appears from the judgment, was proceeding as by law provided and as hereinbefore indicated. But, thereafter, it erroneously assumed that it could sit in a dual capacity of juvenile judge and as committing

magistrate. This conclusion is based upon the remaining portion of the court's order, as follows, to wit:

"Further that a crime has been committed and the said Owen Lewis was capable of committing the crime charged and that there is probable cause to believe he did commit the same and that at the time of the commission of said crime he was capable of knowing, and did know, the wrongfulness of his said acts constituting said crime.

"Whereupon, premises considered, it is the order and judgment of the court that the said Owen Lewis be and he is hereby held to answer for the crime of Rape in the 2nd Degree in the District Court of this County and that he be proceeded against in all matters as though he had reached his majority."

> "John D. Gulager,
> "Judge of Juvenile Court."

In thus assuming that he could sit in the dual capacity of both juvenile judge and committing magistrate, the county court acted erroneously and that portion of the order in which he held Owen Lewis to answer for the crime of rape in the second degree in the district court was void since the same was sought to be made and entered, not upon the hearing on the preliminary complaint, but on the hearing on the petition alleging juvenile delinquency. In so acting, the juvenile court was in error. This error, however, was harmless, under the circumstances herein involved.

When the petitioner, Owen Lewis, was charged by information in the district court, that court acted arbitrarily in assuming that Lewis was not mentally competent. Being without appellate jurisdiction in the matter, it was encumbent upon the district court to assume that the proceedings theretofore had in the county court were

regular. Its action, under the premises herein involved, was therefore erroneous.

However, when the district court refused to assume jurisdiction, the juvenile court, under its power of continuing jurisdiction, was clearly within the law in proceeding to make disposition of the child. Its prior adjudication of juvenile delinquency by reason of the commission of crime was as by law provided and formed a proper basis of jurisdiction for an order of disposition under the provisions of Title 10 O. S. A. § 111, which said juvenile court did do.

The jurisdiction of the court being well laid to make disposition under the law, of said child, this case is not within the scope of habeas corpus. As was said in Ex parte Cameron, 78 Okla. Cr. 42, 143 P. 2d 164:

"On habeas corpus, the inquiry is limited to the questions whether the court * * * had jurisdiction of the person of the defendant and of the crime charged, and did the court have jurisdiction to render the particular judgment."

In Ex parte Massengale, 67 Okla. Cr. 181, 93 P. 2d 41, 42, this court said:

"The scope of review on habeas corpus is limited to an examination of the jurisdiction of the court whose judgment of conviction is challenged."

See, also, Ex parte Wagner, 58 Okla. Cr. 161, 50 P. 2d 1135; Ex parte Thomas, 56 Okla. Cr. 258, 37 P. 2d 829; Ex parte Long, 26 Okla. Cr. 259, 223 P. 710; holding in accord.

We are therefore of the opinion that the county court, sitting as juvenile judge—and after the return of Owen Lewis from the district court—in entering its order

committing him to the State Training School for White Boys, at Helena, based upon the hearing on the petition of juvenile delinquency theretofore conducted, acted within its powers as defined by law, and said Owen Lewis stands committed on a valid order to said training school.

Attorneys Wilcoxen and Hillhouse appointed, virtually without compensation, to represent the petitioner, deserve special commendation for their efforts and endeavor, not only in proceedings below, but also in this appeal.

For the foregoing reasons, the writ of habeas corpus is denied.

BAREFOOT, P. J., and JONES, J., concur.